STATE OF NORTH CAROLINA v. FRANKLIN WRIGHT

No. 81

(Filed 14 May 1976)

1. **Constitutional Law § 29— systematic racial exclusion of jurors — insufficient showing**

   The trial court did not err in summarily denying defendant's motion to dismiss the jury array "for the reason that there are no blacks" without requiring the State to show affirmatively the absence of systematic exclusion where defendant offered no evidence that Negroes were excluded by reason of their race, although he had ample time to do so, and thus failed to carry the burden of establishing discrimination and also failed to make out a *prima facie* case of racial discrimination.

2. **Constitutional Law § 30— nineteen month delay between warrant and trial — no denial of right to speedy trial**

   Defendant was not denied his constitutional right to a speedy trial by a delay of some nineteen months between the date the warrant was served and the date of defendant's trial on charges of breaking and entering and larceny where defendant was either in jail awaiting trial on other charges or in prison following conviction on other charges during such time; statistics on the operation of the courts in this State show that regular sessions of court scheduled for the county were not sufficient to dispose of the cases calendared and it is thus apparent that the district attorney did not negligently or

arbitrarily delay trying defendant; defendant failed to show the names of witnesses whom he claimed were unavailable, what their testimony might be, or what efforts had been made to secure their presence at trial; defendant failed to show the existence of a detainer against him; and defendant filed a handwritten motion for a speedy trial before he was indicted upon the charges, no additional attempts to obtain a speedy trial were made after counsel was appointed, and defendant was tried at a special session of court six weeks after he filed a motion to dismiss because of the delay.

3. **Constitutional Law § 30; Criminal Law § 91— mandatory disposition of detainers — inapplicability of statute**

The statute relating to mandatory disposition of detainer charges upon request by a prisoner, G.S. 15-10.2, was inapplicable where defendant was not serving a sentence in the State prison system and no detainer had been filed against him at the time he filed a motion with the clerk for disposition of charges against him; furthermore, defendant was not entitled to the benefit of the statute where he failed to send his motion to the district attorney of the judicial district in which the charges were pending.

Justice EXUM dissenting.

APPEAL by defendant pursuant to G.S. 7A-30(1) from the decision of the Court of Appeals, reported in 28 N.C. App. 426, 221 S.E. 2d 751 (1976), finding no error in the trial before *Martin (Harry C.), J.,* at the 19 May 1975 Session of WATAUGA Superior Court.

Defendant was charged on a bill of indictment, proper in form, with the felonious breaking and entering of the Villa Maria restaurant in Blowing Rock, North Carolina, and with the felonious larceny therefrom of $600.

The State's evidence tends to show the following: The Villa Maria was broken into on the night of 22 August 1973 and some $500 to $800 in coins was taken from the vending machines located therein. On that date, Bruce Johnson and defendant, both Negroes, were living together in a trailer in Boone, North Carolina. That night, around midnight, Johnson drove defendant to the Villa Maria restaurant, which was closed, and let him out. Defendant told Johnson that he was going to rob the pinball machines at the Villa Maria and for him to return and pick him up in about an hour and a half. Later that night while Johnson was waiting for defendant, he was questioned by a Blowing Rock police officer for parking near the Villa Maria at such a late hour. After this incident, Johnson drove back to a friend's house in Boone. There he found defend-

ant who told Johnson that he had called a friend to pick him up at the Villa Maria, which she did. Johnson and defendant then returned to a place near the Villa Maria and retrieved a metal box containing approximately $525 in coins, which defendant said he had taken from the Villa Maria and hidden there. On 23 August 1973, Johnson and defendant drove to Johnson's home in Louisburg, North Carolina, stopping at a bank in Winston-Salem where defendant converted the coins into currency.

The officer who had questioned Johnson in Blowing Rock on the night of 22 August had noted Johnson's license number, and by this, the police traced Johnson to his home in Louisburg. Johnson was arrested on 7 September 1973, and on 9 September he made a complete statement to the police relating the facts substantially as set out above. A warrant was served on defendant charging him with these offenses on 5 October 1973 while he was being held in Franklin County Jail on another charge.

Defendant testified that on the night in question Johnson drove him to Blowing Rock to see a girl friend with whom he stayed for several hours before returning to Boone. When Johnson returned later that night, he had a large number of coins in his possession. The next day he accompanied Johnson to his home in Louisburg, stopping in Winston-Salem where defendant converted the coins into currency for Johnson. Defendant denied breaking into or robbing the Villa Maria. He admitted, however: "I have been convicted of larceny, arson, breaking, and entering. I don't know how many times I have been convicted of larceny. I have been convicted of breaking and entering into other people's buildings once or twice. I am not sure about that either, I have been convicted of arson once."

The jury found defendant guilty as charged. From the imposition of a prison sentence of three to five years, effective at the expiration of two ten-year sentences imposed on defendant in Wake Superior Court on 17 December 1973, defendant appealed to the Court of Appeals. That court found no error. Defendant appealed to this Court as a matter of right for the reason that the case involved substantial questions arising under the Constitution of the United States.

*Attorney General Rufus L. Edmisten and Associate Attorney Noel Lee Allen for the State.*

*Robert H. West for defendant appellant.*

MOORE, Justice.

[1] Defendant's case was called and he was arraigned in open court, entered a plea of not guilty, and twelve jurors were called to the jury box but not empaneled. Defense counsel then moved to dismiss the entire jury "for the reason that there are no blacks." Defendant offered no evidence in support of this motion and the court overruled it. Defendant argues that the court erred in summarily denying his motion without giving him an opportunity to offer evidence on the motion and without requiring the State to show affirmatively the absence of systematic exclusion. This is the first assignment discussed in defendant's brief.

Defendant's counsel was appointed on 3 April 1974, and during the some thirteen months which elapsed prior to trial, counsel could have investigated all aspects of the selection or exclusion of blacks from the jury box of Watauga County. Yet, he did not offer any evidence that no Negroes had been summoned as jurors for that particular term, nor that Negroes had been systematically excluded from jury service on the basis of race. Neither did he request additional time in which to procure such evidence. To the contrary, when the motion was denied, defendant excepted and stated: "We pass on the Jury." The trial judge then excused the jurors and, in their absence, asked defense counsel, "Do you have any evidence in support of the motion which appears of record . . .?" To this question, defendant's attorney replied, "No, sir." Although defense counsel contends that this request referred to another motion pending at the time, the record clearly indicates that if defendant had testimony concerning the jury's selection, the judge would have heard it at that time. In fact, defendant was immediately thereafter placed on the stand and testified on *voir dire* concerning his motion for a speedy trial. He made no statement and was not asked anything concerning the composition or the selection of the jury.

In *State v. Spencer*, 276 N.C. 535, 173 S.E. 2d 765 (1970), Justice Huskins, speaking for the Court, said:

"Both state and federal courts have long approved the following propositions:

"1. If the conviction of a Negro is based on an indictment of a grand jury or the verdict of a petit jury

from which Negroes were excluded by reason of their race, the conviction cannot stand. [Citations omitted.]

"2. If the motion to quash alleges racial discrimination in the composition of the jury, the burden is upon the defendant to establish it. [Citations omitted.] But once he establishes a *prima facie* case of racial discrimination, the burden of going forward with rebuttal evidence is upon the State. [Citations omitted.]

"3. A defendant is not entitled to demand a proportionate number of his race on the jury which tries him nor on the venire from which petit jurors are drawn. [Citations omitted.]

"4. A defendant must be allowed a reasonable time and opportunity to inquire into and present evidence regarding the alleged intentional exclusion of Negroes because of their race from serving on the grand or petit jury in his case. [Citations omitted.] 'Whether a defendant has been given by the court a reasonable time and opportunity to investigate and produce evidence, if he can, of racial discrimination in the drawing and selection of a . . . jury panel must be determined from the facts in each particular case.' *State v. Perry, supra* [248 N.C. 334, 103 S.E. 2d 404 (1958)]."

*See also State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768 (1972).

In present case, defendant offered no evidence that Negroes were excluded by reason of their race, although he had ample time to do so. Hence, he failed to carry the burden of establishing discrimination and also failed to establish a *prima facie* case of racial discrimination. Therefore, the State had nothing to rebut and the trial judge correctly denied defendant's motion challenging the array.

[2] Defendant next contends the Court of Appeals erred in affirming the trial court's refusal to dismiss the charges against defendant on the ground that his Sixth Amendment right to a speedy trial had been violated.

The law concerning a defendant's right to a speedy trial is well established in North Carolina. In *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969), Justice Sharp (now Chief

Justice) set out the basic precepts established by decisions of this Court.

"1. The fundamental law of the State secures to every person *formally accused* of crime the right to a speedy and impartial trial, as does the Sixth Amendment to the Federal Constitution (made applicable to the State by the Fourteenth Amendment, *Klopfer v. North Carolina,* 386 U.S. 213, 18 L.Ed. 2d 1, 87 S.Ct. 988 (1967)).

"2. A convict, confined in the penitentiary for an unrelated crime, is not excepted from the constitutional guarantee of a speedy trial of any other charges pending against him.

"3. Undue delay cannot be categorically defined in terms of days, months, or even years; the circumstances of each particular case determine whether a speedy trial has been afforded. Four interrelated factors bear upon the question: the length of the delay, the cause of the delay, waiver by the defendant, and prejudice to the defendant.

"4. The guarantee of a speedy trial is designed to protect a defendant from the dangers inherent in a prosecution which has been negligently or arbitrarily delayed by the State; prolonged imprisonment, anxiety and public distrust engendered by untried accusations of crime, lost evidence and witnesses, and impaired memories.

"5. The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. A defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice. *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309; *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed,* 382 U.S. 22, 15 L.Ed. 2d 16, 86 S.Ct. 227 (1965); *State v. Patton,* 260 N.C. 359, 132 S.E. 2d 891, *cert. denied,* 376 U.S. 956, 11 L.Ed. 2d 974, 84 S.Ct. 977 (1964); *State v. Webb,* 155 N.C. 426, 70 S.E. 1064."

With these principles in mind, we now consider the four factors enunciated in *State v. Johnson, supra,* and followed in *Barker v. Wingo,* 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972), as they apply to the case before us.

Defendant was arrested on an unrelated charge on 7 September 1973 and served with a warrant for the breaking and entering of the Villa Maria, and larceny therefrom, while in jail on 5 October 1973. An indictment was returned on these charges in January 1974 and defendant was tried in May 1975. Therefore, some nineteen months elapsed between the date the warrant was served and the date of defendant's trial. Although we do not approve of such a long delay, we do not determine the right to a speedy trial by the calendar alone, but must weigh the length of the delay in relation to the three remaining factors. *Barker v. Wingo, supra.*

The second factor, the reason for the nineteen-month delay, does not clearly appear in the record. It *is* clear that defendant was indicted in January 1974, the first session of court after he was arrested, and that at the next session of court in April 1974 an attorney was appointed to represent him. Thereafter, defendant's case was calendared at each succeeding session of court—September 1974, January 1975, March 1975—but not reached. Finally, a special session of court was scheduled for the weeks of 12 May and 19 May 1975 for the trial of the backlog of felony cases. Defendant's case was tried during the week of May 19.

The Court of Appeals took judicial notice of the infrequent sessions of court in Watauga County and found that it was common knowledge that the district attorney first disposes of the cases involving defendants incarcerated in the county jail. From September 1973 through the time of trial, defendant was either in jail in Wake County awaiting trial there on an unrelated charge, or serving time in the State's prison system based on his Wake County conviction; hence, he was not deprived of his liberty due to the charges in this case. The Court of Appeals reasoned that the district attorney was unable to reach defendant's case before each one-week session of court expired, due to the number of defendants in the county jail.

While the conclusions of the Court of Appeals as to the reasons for the delay are undoubtedly correct and would provide sufficient justification for the delay on the part of the State, the State should have presented evidence, preferably through the district attorney, fully explaining the reasons for the delay. In the present case, however, we take judicial notice of the statistics on the operation of the superior courts as compiled by our own Administrative Office of the Courts. G.S.

7A-340 through G.S. 7A-346; 1 Stansbury, N. C. Evidence § 13 (Brandis Rev. 1973), and cases therein cited. The 1974 Annual Report of that office shows that on 1 January 1974, 72 criminal cases were pending in Watauga Superior Court. During 1974, 142 additional criminal cases were filed, 97 of these being felonies. During 1974, 98 cases were disposed of by jury trial, plea or other disposition, leaving 116 cases remaining on 1 January 1975, or an increase of 44 cases from 1 January 1974. These figures further show that during 1974, Watauga County had only 20 days of superior court scheduled for the trial of criminal cases, and used all 20 days. This 100% utilization of such scheduled court days was achieved by only two other counties in the State during 1974. Despite utilizing all available court days, the district attorney was still unable to reduce the docket case load below that of 1973. On 1 January 1975, 116 criminal cases were pending, and during the year, 117 were added. Of these cases, 208 were disposed of in 1975, leaving a backlog of 25 cases pending on 1 January 1976, a significant decrease from 1974. This decrease was in part achieved by the scheduling of a special two-week session in May 1975. From these statistics, it is apparent that the district attorney did not negligently or arbitrarily delay trying defendant, but, on the contrary, the regular sessions scheduled for 1974 were not sufficient to dispose of the cases calendared. Due to this fact, a special session was provided for 1975, at which defendant was tried.

On the issue of prejudice, defendant stated:

". . . The reason why I filed a motion for dismissal is because I wanted witnesses, you know, called in my behalf, and due to the time limit, the witnesses done moved away and can't be contacted because I don't try to contact them, you know. I can't even get an accurate report, you know, recalling way back, what really transpired, you know, and almost two years."

No evidence was presented as to the witnesses he wanted to call, what their testimony would be, or what efforts he had made to contact them.

Lost witnesses and faded memories are only two of the disadvantages the right to a speedy trial is designed to avoid. When a detainer is filed against an individual who is already incarcerated, it jeopardizes his chances for a parole, for proper

good behavior credits, and for work release. *State v. O'Kelly,* 285 N.C. 368, 204 S.E. 2d 672 (1974) ; *State v. White,* 270 N.C. 78, 153 S.E. 2d 774 (1967). Here, however, defendant has failed to show the existence of a detainer against him or other circumstances arising from the delay that have prejudiced him.

Finally, we examine the defendant's demand for a speedy trial. The record discloses that on 13 November 1973, while in jail in Wake County awaiting trial there, defendant filed a motion with the Clerk of Superior Court of Watauga County. Obviously, it was handwritten by a man of limited education and without benefit of counsel. The motion reads as follows:

> "Comes now Franklin Wright afore said court and moves this herein styled 'Motion for Speedy Trial' be so entered on behalf of above named petitioner pursuant to KROPLER v N. CAROLINA, 385 Supp 2d Fd (b) 10; Due Process and Equal Protection Clause U. S. Const—Supra Note—WAINWRIGHT v U.S., 349 at 4d F, 'Right to Speedy Trial shall not be abused without due cause, violation of same shall constitute irreverseable error by trial court & dismissal thereof.' Petitioner was arrested Sept. 7, 1973, charged with B&E,L, the Villa Maria, located in Blowing Rock N. C.

> "So submitted this 9 day of Nov. 1973.

> > s/ FRANKLIN WRIGHT
> > Affidavit"

Defendant contends that by reason of G.S. 15-10.2, this case should be dismissed. G.S. 15-10.2, in part, provides:

> "(a) Any prisoner serving a sentence or sentences within the State prison system who, during his term of imprisonment, shall have lodged against him a detainer to answer to any criminal charge pending against him in any court within the State, shall be brought to trial within eight months after he shall have caused to be sent to the district attorney of the court in which said criminal charge is pending, by registered mail, written notice of his place of confinement and request for a final disposition of the criminal charge against him; said request shall be accompanied by a certificate from the Secretary of Correction stating the term of the sentence or sentences under which

State v. Wright

the prisoner is being held, the date he was received, and the time remaining to be served. . . ."

[2, 3]  At the time defendant filed his motion with the clerk, he had not been indicted for the offenses *sub judice.* He was in jail awaiting trial on nonrelated charges. He was not serving a sentence within the State prison system and no detainer had been filed against him by the superior court of Watauga County. Hence, G.S. 15-10.2 does not apply. Furthermore, defendant failed to comply with the requirements of G.S. 15-10.2 that the motion be sent by registered mail to the district attorney of the judicial district in which the charges are pending. In *State v. White, supra,* we held that the failure to follow this requirement deprived defendant of the benefit of this statute. Regardless of the statute, however, defendant was entitled to a speedy trial as guaranteed by the Constitution of the United States and the Constitution of North Carolina. We do not believe he has been denied these constitutional rights. Once counsel was appointed for defendant, no additional attempts to secure a speedy trial were made. On 27 March 1975, defendant filed a motion to dismiss because of the delay. Six weeks later he was tried. Considering the number of criminal cases pending in Watauga County in 1974-1975, the limited number of days scheduled for the trial of criminal cases, the fact that the scheduled days were fully utilized, and the failure of defendant to show any prejudice by reason of this delay, we hold that defendant has not been deprived of his right to a speedy trial. Every effort should be made by the State to avoid a delay such as occurred in this case, but in view of all the circumstances here, we do not think the prosecution has been negligent or willful in the handling of defendant's case or has deliberately or unnecessarily caused the delay for the convenience or supposed advantage of the State. Defendant's motion to dismiss was therefore properly overruled.

The decision of the Court of Appeals finding no prejudicial error is correct and is therefore affirmed.

Affirmed.

Justice EXUM dissenting.

While I agree with almost all the majority *says* about the speedy trial issue, I respectfully disagree with the conclusion

State v. Wright

drawn from what is said. Defendant's motion to dismiss for failure of the State to provide him a speedy trial under Amendments VI and XIV to the United States Constitution and Section 18, Article I, of the North Carolina Constitution should have been allowed.

I agree with the majority that upon defendant's showing of a delay of eighteen months, it was incumbent upon the State to present "evidence, preferably through the district attorney, fully explaining the reasons for the delay." I agree, too, that the factor of waiver also weighs in defendant's favor inasmuch as he made demand early in the proceedings against him for trial.

The factor of prejudice, I believe, weighs neither in favor of nor against defendant. It is true that he could not name the witnesses whom he claimed were unavailable or relate what their testimony might be; nor did he say what efforts were made to have them present. He seems to attribute, however, these very inabilities to the long lapse of time saying in effect that because of it the witnesses had "moved away and can't be contacted" and that his own memory of the occasion had largely faded. He must have suffered at least from prolonged anxiety, public distrust and, more specifically, distrust by those in whose custody he was held on unrelated charges—these being some of the things which, the majority recognizes, a speedy trial is designed to avoid.

Only one factor—the reason for the delay—is left to weigh against defendant on his motion. Because the State failed to come forward with any adequate reason, as was incumbent upon it to do upon defendant's showing, defendant's motion should have been allowed.

The majority circumvents this failure of the prosecution below by judicially noticing certain statistical data from the Administrative Office of the Courts. I agree that this data may be judicially noticed, but I disagree with the majority's conclusion that the data demonstrates "the district attorney did not negligently or arbitrarily delay trying defendant. . . ." At most the data shows that the District Attorney was busy in Watauga County during the pendency of this prosecution and fully utilized the time available to him. The question, though, is not whether he was busy, generally, but why he did not busy himself with the case against this defendant. Had the District

Attorney relied at trial upon the information judicially noticed by the majority, *and shown further* that he reasonably gave the matters which he did handle precedence over defendant's case, I would have no quarrel with denying the motion for a speedy trial. The District Attorney might have shown, for example, that the cases to which he gave preference were older than defendant's, or that they involved people in jail because of charges pending against them in Watauga County, or that they involved witnesses or other evidence which if not promptly utilized may not later be available. There could be other various reasons why the cases he did dispose of *should have been handled* before defendant's. The point is that no such reasons appear in this record and the statistical data relied on by the majority does not supply them.