STATE OF NORTH CAROLINA v. THEODORE AVERY

No. 89

(Filed 7 April 1981)

1. Constitutional Law § 50— six months between arrest and trial — no denial of speedy trial

Defendant was not denied his constitutional right to a speedy trial by a six month delay between his arrest and his trial, since such lapse of time was insufficient under the circumstances of these crimes even to be "presumptively prejudicial" so as to trigger inquiry into other factors; a significant portion of the delay was attributable to defendant's motion for change of venue; there was nothing in the record to indicate that defendant requested a speedy trial; and defendant did not allege any prejudice resulting from the delay.

2. Criminal Law § 91— statutory right to speedy trial not denied

Defendant was not denied his statutory right to a speedy trial where his indictment occurred on 4 September 1979; trial began on 28 January 1980, more than 120 days later; on 5 September 1979 defendant moved for change of venue

State v. Avery

or, in the alternative, for a special venire; on 29 October, the next criminal session of Bertie Superior Court, his motion for special venire was allowed; that portion of time between 5 September and 29 October was properly excluded in computing the time within which defendant's trial should begin; and when the 54 days between filing and disposition of defendant's motion was excluded, defendant was tried within 120 days after indictment. G.S. 15A-701(b)(1)(d).

**3. Criminal Law § 92.3— multiple offenses — transactional connection — joinder proper**

The "transactional connection" required by G.S. 15A-926 for joinder of offenses at trial existed between the offenses in this case and the State's motion for joinder was properly allowed where all the offenses involved related directly to defendant's escape from jail and his efforts to avoid recapture; the assault on the jailer was the means by which defendant effected his jail break; the larceny of the pistol was to provide defendant with a weapon and thus render his recapture more difficult; the larceny of the pickup truck was to facilitate his flight from jail; the murder of a police officer was to prevent defendant's recapture; there was thus a series of acts connected together by their relation to a single event, defendant's escape from jail; and the events giving rise to the offenses were not so separate in time, place and circumstances that their joinder was unjust, and that the murder occurred the day following the assult, jailbreak and larceny would not alter this conclusion.

**4. Escape § 6; Larceny § 6.1— value of stolen vehicle — defendant as prisoner — admissibility of evidence**

In a prosecution of defendant for felonious larceny of a motor vehicle, jailbreak, and other offenses, the jailer could properly testify as to the fair market value of his pickup truck which defendant allegedly stole, and the jailer's statement that defendant was a prisoner constituted a statement of physical fact based upon the jailer's personal knowledge and did not constitute an opinion which should have been excluded.

**5. Larceny § 6.1— absence of permission to take pistol — admissibility of testimony**

In a prosecution of defendant for felonious larceny of a firearm and other offenses, there was no merit to defendant's objection to the sheriff's testimony that he did not give defendant permission to "take, steal and carry away, the pistol from the county jail," since the prosecutor's question as to whether defendant had authority to take the pistol was asked not to prejudice the jury but to establish an element of an offense with which defendant was charged; moreover, the prosecutor's error in using the word "steal" in his question was harmless given the abundance of testimony that the pistol, property of the county, was taken without proper authority from the jail.

**6. Homicide § 21.7— murder of officer — officer's warrantless entry into home — no defense**

There was no merit to defendant's contention that an officer's warrantless entry into the home of defendant's sister was unlawful and that it therefore constituted a complete defense to a charge of homicide since there was no evidence that defendant shot the officer to death in an attempt to prevent the officer

State v. Avery

from entering the dwelling, that defendant at any time believed himself or other occupants of the dwelling to be in danger of death or great bodily harm, or that the officer intended to commit a felony; and there was no evidence of either defense of the habitation or defense of self.

**7. Criminal Law § 102.7— prosecutor's comment on credibility of witnesses — no improper argument**

The prosecutor's argument that, if the jury believed defendant, then it would have to conclude that other witnesses including the sheriff had lied was not inappropriate, since the prosecutor did not call anyone a liar or intimate that in his opinion any witness was a liar.

Justice MEYER did not participate in the consideration and decision of this case.

BEFORE *Judge Donald L. Smith,* presiding at the 28 January 1980 Session of BERTIE Superior Court, defendant was found guilty by a jury of second degree murder, felonious larceny of a firearm, felonious larceny of a motor vehicle, jailbreak and misdemeanor assault. He was sentenced to life imprisonment on the murder conviction, ten years on the felonious larceny convictions to begin at the expiration of the life sentence, and thirty days on the assault conviction to run concurrently with the life sentence.[1] Defendant appeals of right to this Court pursuant to G.S. 7A-27(a).[2] This case was docketed and argued as No. 48, Fall Term 1980.

*Rufus L. Edmisten, Attorney General, by James Peeler Smith, Assistant Attorney General, (and Lex Allen Watson II, 1980 Summer Intern, Campbell Law School).*

*Joseph J. Flythe, Attorney for defendant appellant.*

EXUM, Justice.

Defendant Avery assigns as his error the denial of his constitutional and statutory rights to a speedy trial, joinder of the offenses for trial, certain evidentiary rulings, denial of his motion to dismiss at the close of all the evidence, denial of his motion for mistrial, and an erroneous charge to the jury by the trial judge. Upon careful examination of defendant's contentions we conclude that he received a fair trial free from prejudicial error.

---

[1] The record does not reflect judgment in the jailbreak case.

[2] Defendant's motion to bypass the Court of Appeals on the felonious larceny, jailbreak and assault convictions was allowed by this Court on 16 June 1980.

The state's evidence tends to show the following: At approximately 5:00 p.m. on 1 August 1979 defendant and one Stephen Hall, both prisoners in the Bertie County jail, assaulted the jailer as he placed a bucket in their cell. While Hall blocked the cell door to prevent the jailer's escape, defendant repeatedly struck the jailer with his fists and with a black boot. Defendant, threatening to kill the jailer, demanded the keys to his pickup truck; the jailer gave the keys to Hall. Defendant locked the jailer in a cell and, after prying open a cabinet drawer with a hammer, stole a .38 caliber pistol belonging to Bertie County and a money box containing change for the soft-drink machine. Defendant and Hall then fled the jail in the jailer's pickup truck and traveled towards Perrytown, North Carolina.

During the trip defendant said that "if anybody tried to stop him, he was going to kill them." Defendant and Hall abandoned the truck in an open field and walked to a nearby house where friends of Hall lived. Hall secured a ride to Perrytown; he turned himself in to law enforcement authorities the next day. Defendant was able to get a ride to the home of his sister, Shirley Avery, in Lewiston, where he spent the night.

Shortly after dark on 2 August 1979 Sheriff Edward Daniels, after being informed that defendant might be found in one of three houses, divided law enforcement officers into three groups with each being responsible for the search of one of the houses. In Sheriff Daniels' group were Officers Tom Ashley, Calvin Cherry and Donald Cowan. This group proceeded to the house of Shirley Avery. Upon arrival Sheriff Daniels, accompanied by Officer Ashley, went to the porch, identified himself, and knocked on the door; Officers Cherry and Cowan remained outside the house. Receiving no response, Sheriff Daniels again identified himself and knocked on the door. There was no response, although he could hear music coming from within the house. Officer Ashley then turned the door knob and pushed the door open. The two men entered the house and, while calling out, "If anyone is in here, come out," walked through the living room and a bedroom. As they prepared to enter a bathroom located at the rear of the bedroom Sheriff Daniels and Officer Ashley heard a woman's voice asking who was in her house. They returned to the front porch where they were confronted by Shirley Avery. After Sheriff Daniels explained the purpose of their search Shirley Avery denied any knowledge of her brother's whereabouts.

While Sheriff Daniels was talking to Shirley Avery, Officer Cherry entered the house. He walked through the living room and bedroom and then, with his flashlight focused on the floor, stepped into the bathroom. A shot was fired, striking Officer Cherry in the chest and killing him. Officer Ashley, unaware of the presence of a window in the bathroom, rushed to the bedroom, trained his weapon upon the bathroom door, and "heard a noise as if somebody was going to come out." He was then informed by Sheriff Daniels that someone had been seen either running around the house or going out the window. Later that night a neighbor told Sheriff Daniels that she had seen defendant, wearing only black pants, climb out of the bathroom window of Shirley Avery's house.

At approximately 6:00 a.m. on 3 August defendant entered the kitchen of a trailer where two young girls were. He asked them not to tell anyone they had seen him. The girls left the trailer and told an SBI agent that defendant was inside. Several officers searched the trailer; they pulled defendant, wearing only black pants, from beneath a bed. A .38 caliber pistol was found under the bed. A ballistics expert testified that in his opinion the bullet which killed Officer Cherry was fired from this pistol. The pistol was further identified as being like the pistol taken from the Bertie County jail.

Defendant testified that he did not shoot Officer Cherry. He said he was some twenty-five feet away from his sister's house when he heard a gunshot. He went to the bathroom window, peeped in, and saw Sheriff Daniels standing over Officer Cherry's body. It appeared to him that "Sheriff Daniels was trying to put the pistol back into Calvin Cherry's holster." Defendant remained at the bathroom window approximately five seconds after which he picked up a pistol he found lying on the ground in front of the window. He ran and was later apprehended.

I.

[1] Defendant Avery first assigns as error the denial of his constitutional right to a speedy trial. Both the fundamental law of this state and the Sixth Amendment to the United States Constitution guarantee those persons formally accused of crime the right to a speedy trial. *State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976), *cert. denied*, 429 U.S. 1049 (1977); *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969). Interrelated factors to be considered in determining whether a defendant's constitutional right to a speedy

trial has been violated are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514 (1972); *State v. McKoy*, 294 N.C. 134, 240 S.E. 2d 383 (1978); *State v. Wright, supra; State v. Smith*, 289 N.C. 143, 221 S.E. 2d 247 (1976).

Here the length of delay between defendant's arrest on 3 August 1979 and his trial on 28 January 1980 was approximately six months. This lapse of time is insufficient under the circumstances of these crimes even to be "presumptively prejudicial" so as to trigger inquiry into the other factors. *Barker v. Wingo, supra* at 530. Further, a significant portion of this delay was attributable to defendant's motion for change of venue; there is nothing in the record to indicate that defendant requested a speedy trial; and finally, defendant does not allege nor can we find any prejudice to defendant by the delay. Defendant's brief contains only the bare allegation that defendant was deprived of his constitutional right to a speedy trial; it contains no argument nor citation of authority to support this allegation. This assignment of error is overruled.

II.

**[2]** Defendant Avery also assigns as error the denial of his statutory right to a speedy trial. On 28 January 1980 Judge Donald L. Smith denied defendant's 23 January motion to dismiss for failure to grant a speedy trial under the Speedy Trial Act, G.S. 15A-701. The statute requires a defendant's trial to begin "[w]ithin 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last."[3] Here the last of the above-named events, defendant's indictment, occured on 4 September 1979; trial began on 28 January 1980, more than 120 days later. But G.S. 15A-701(b) provides:

"The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:

(1) Any period of delay resulting from other proceedings concerning the defendant including,

---

[3] The statute applies to a defendant "who is arrested, served with criminal process, waives an indictment or is indicted, on or after October 1, 1978, and before October 1, 1981 . . . ." G.S. 15A-701(a1)(1980 Interim Supplement).

but not limited to, delays resulting from . . . .

d. Hearings on pretrial motions or the granting
or denial of such motions . . . ."

On 5 September 1979 defendant moved for change of venue or, in
the alternative, for a special venire. On 29 October, the next Crimi-
nal Session of Bertie Superior Court, his motion for special venire
was allowed by Judge Small. Defendant was tried on 28 January by
a jury selected from a Northampton County venire pursuant to
Judge Small's order. Judge Smith, in denying defendant's motion
to dismiss, excluded the period of delay from 30 October 1979 to 28
January 1980 from computations under the Speedy Trial Act.

We conclude that Judge Smith properly denied defendant's
motion to dismiss on statutory speedy trial grounds. We need not,
however, consider the propriety of Judge Smith's exclusion of the
entire 30 October to 28 January period. That portion of the period
between 5 September and 29 October was properly excludable
under our holding in *State v. Oliver*, 302 N.C. 28, ___ S.E.2d ___
(1981). When this much of the period is excluded, the trial occurred
within 120 days of indictment.

In *Oliver* we recognized that a motion for change of venue,
while pending, necessarily delays the setting of a case for trial until
it is determined. We concluded, therefore, that such a motion is
within the statutory reference to "pretrial motions" found in G.S.
15A-701(b)(1)(d). We held: "Provided the motion is heard within a
reasonable time after it is filed and the state does not delay the
hearing for the purpose of thwarting the speedy trial statute, the
time between the filing of the motion and its disposition is properly
excluded in computing the time within which a trial must begin."
*Id.* at 41, ___ S.E. 2d at ___ . In *Oliver* a 29-day period between
filing and disposition of defendant's motion for change of venue was
found to be reasonable.

. Although the 54-day period in the present case would ordinar-
ily approach the borders of reasonableness, we find it under the
circumstances here to be within those borders. It is clear the delay
was attributable to comparatively infrequent sessions of criminal
superior court in Bertie County. We judicially notice that the next
Criminal Session of Bertie Superior Court after defendant's 5 Sep-
tember motion began 29 October. *See State v. Shook*, 293 N.C. 315,
237 S.E. 2d 843 (1977); *State v. Wright, supra*, 290 N.C. 45, 224 S.E.

2d 624. The frequency with which the superior court sits is a factor properly considered in determining whether a defendant's motion for change of venue or for a special venire has been heard within a reasonable time for purposes of computing the time excludable under the Speedy Trial Act. Since defendant Avery's motion was determined at the next criminal session after it was filed, we hold it was determined within a reasonable period of time.

Consequently, after excluding under G.S. 15A-701(b)(1)(d) the 54 days between filing and disposition of defendant's motion, it is clear that defendant was tried within 120 days after indictment. This assignment of error is overruled.

## III.

**[3]** Defendant Avery assigns as error the joinder for trial of the murder, felonious larceny, jailbreak and misdemeanor assault charges. The state's pre-trial motion for joinder pursuant to G.S. 15A-926 was allowed by the trial court over defendant's objection. Defendant objects because the events which resulted in the larceny, jailbreak and assault charges occurred "several hours before the alleged murder and at a completely different place."

North Carolina General Statute 15A-926 provides, in pertinent part:

> "§ 15A-926. *Joinder of offenses and defendants.*— (a) Joinder of Offenses.— Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan . . . ."

The statute, then, requires a "transactional connection" between the offenses sought to be joined for trial. *State v. Greene*, 294 N.C. 418, 421, 241 S.E. 2d 662, 664 (1978). Motions to join for trial offenses which have the necessary transactional connection under G.S. 15A-926 are addressed to the discretion of the trial court and, absent a showing of abuse of discretion, its ruling will not be disturbed on appeal. *State v. Greene, supra; State v. Davis*, 289 N.C. 500, 223 S.E. 2d 296, *death sentence vacated*, 429 U.S. 809 (1976); *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974), *death sentence*

State v. Avery

*vacated*, 428 U.S. 903 (1976). If, however, granting the state's motion for joinder would hinder a defendant's ability to present his defense or otherwise receive a fair trial the motion should be denied.[4] *State v. Greene, supra; State v. Davis, supra.* In determining whether a defendant will be prejudiced by joinder, one question is "whether the offenses are *so separate in time or place* and *so distinct in circumstances* as to render a consolidation unjust and prejudicial to defendant." *State v. Johnson*, 280 N.C. 700, 704, 187 S.E. 2d 98, 101 (1972). (Emphasis original.)

We hold that joinder in the present case was proper. The requisite "transactional connection" existed between the offenses joined; all related directly to defendant's escape from the Bertie County jail and his efforts to avoid recapture. The assault on the jailer was the means by which defendant effected his jailbreak; the larceny of the pistol was to provide defendant with a weapon and thus render his recapture more difficult; the larceny of the pickup truck was to facilitate his flight from the jail; and the murder of Officer Cherry was to prevent defendant's recapture. We find, then, a "series of acts . . . connected together" by their relation to a single event, defendant's escape from jail. Further, the events giving rise to the offenses were not so separate in time, place and circumstances that their joinder was unjust. That the murder occurred the day following the assault, jailbreak and larceny does not alter this conclusion. *See, e.g., State v. Powell*, 297 N.C. 419, 255 S.E. 2d 154 (1979) (two offenses occurring some four days apart properly joined for trial); *State v. Blizzard*, 280 N.C. 11, 184 S.E. 2d 851 (1971) (three offenses occurring on at least two dates properly joined for trial). The state's motion for joinder was, therefore, properly granted. This assignment of error is overruled.

## IV.

Defendant assigns as error the admission of certain evidence over his objection. Defendant contends the Bertie County jailer's testimony that on 1 August his pickup truck had a fair market value of $3000 and that on that date defendant was a "prisoner" constitutes inadmissible opinion evidence. Defendant also contends Sheriff Daniels' testimony that he did not give defendant permission to

---

[4] G.S. 15A-927(b)(1) provides that the trial court must grant a pre-trial motion for severance of offenses if "it is found necessary to promote a fair determination of the defendant's guilt or innocence of each offense."

"take, steal and carry away this gun [the gun stolen from the Bertie County jail]" was improperly admitted since its only effect was to excite the jury's prejudice or sympathy. These contentions are patently without merit.

**[4]** The jailer's testimony as to the fair market value of his pickup truck was properly admitted. He had earlier testified that he purchased the truck four years ago when it was new, that it cost him $5000 plus the value of an old truck he traded, and that the truck was in good condition when stolen. The witness, therefore, while not an expert, had such knowledge and experience so as to enable him intelligently to value his truck. *See Huff v. Thornton,* 287 N.C. 1, 213 S.E. 2d 198 (1975); *State v. Tolley,* 30 N.C. App. 213, 226 S.E.2d 672, *cert. denied,* 291 N.C. 178, 229 S.E. 2d 691 (1976); *State v. Cotten,* 2 N.C. App. 305, 163 S.E. 2d 100 (1968); *see generally* 1 Stansbury's North Carolina Evidence § 128 (Brandis rev. 1973).

The jailer's statement that defendant was a "prisoner" constitutes a statement of physical fact based on the jailer's personal knowledge. It is not an opinion. We agree with the holding of the Court of Appeals in *State v. Carroll,* 17 N.C. App. 691, 692, 195 S.E. 2d 306, 307 (1973), that "[t]he fact that a person is a prison inmate is a status based on observable facts . . . . The witness having personally observed these facts may testify to them." At least the statement is admissible as a "shorthand statement of fact." *See* 1 Stansbury's North Carolina Evidence § 125 (Brandis rev. 1973).

**[5]** Defendant's objection to Sheriff Daniels' testimony that he did not give defendant permission to "take, steal and carry away" the pistol from the Bertie County jail is also without merit. Defendant was charged with larceny of a firearm. To constitute larceny one must wrongfully take and carry away the personal property of another without his consent and with the requisite felonious intent. *See, e.g., State v. Bowers,* 273 N.C. 652, 161 S.E. 2d 11 (1968); *State v. Griffin,* 239 N.C. 41, 79 S.E. 2d 230 (1953). Thus the prosecutor's question as to whether defendant had authority to take the pistol was asked not to prejudice the jury but to establish an element of an offense with which defendant was charged. The prosecutor should not have included the word "steal" in his question. We are satisfied, however, that this error was harmless given the abundance of testimony that the pistol, property of Bertie County, was taken without proper authority from the jail. Certainly the error does not

present a reasonable possibiity that in its absence a different result would have been reached at trial. G.S. 15A-1443(a). Defendant's evidentiary assignments of error are, therefore, overruled.

V.

**[6]** Defendant assigns error to denial of his motion to dismiss at the close of all the evidence. His sole contention is that Officer Cherry's warrantless entry into the home of Shirley Avery was unlawful; therefore it constitutes a complete defense to the homicide charge. This argument is obviously without merit.

In order that we may deal immediately and quickly with the patently fatal flaw in defendant's argument we will assume, without deciding, that (1) defendant, who was not residing in the dwelling, has standing to complain of an unlawful entry and (2) the entry by Officer Cherry was unlawful. Even so, Cherry's unlawful entry would not constitute a defense to defendant's killing him unless defendant was privileged to use deadly force to prevent the unlawful entry. *State v. McCombs*, 297 N.C. 151, 253 S.E. 2d 906 (1979). "[T]he use of deadly force in defense of the habitation is justified only to *prevent* a forcible entry into the habitation under such circumstances . . . that the occupant reasonably apprehends death or great bodily harm to himself or other occupants at the hands of the assailant or believes that the assailant intends to commit a felony . . . . Once the assailant has gained entry, however, the usual rules of self-defense replace the rules governing defense of habitation . . . ." *Id.* at 156-57, 253 S.E. 2d at 910. (Emphasis original.) Thus even if we assume that defendant was entitled to resist arrest because of Cherry's assumed unlawful entry under the doctrine of *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970), defendant was not privileged to use deadly force in resisting unless he reasonably believed himself to be in danger of death or great bodily harm. *State v. Sanders*, 295 N.C. 361, 245 S.E. 2d 674 (1978).

Here there is no evidence that defendant shot Cherry to death in an attempt to prevent Cherry from entering the dwelling, that defendant at any time believed himself or other occupants of the dwelling to be in danger of death or great bodily harm, or that Cherry intended to commit a felony. There is no evidence of either defense of the habitation or defense of self. Defendant testified that he did not shoot Cherry.

This assignment of error is overruled.

---

---

### VI.

**[7]**   Defendant assigns as error the denial of his motion for a mistrial. The prosecutor, in his closing argument to the jury, stated:

> "If you believe the defendant, you've got to believe that everybody else up here who has testified in this whole trial lied, including three of his own witnesses."

Defendant's objection to this remark was sustained. The prosecutor continued his argument, pointing out that various witnesses must have been mistaken if defendant's testimony was to be believed, and then stated, "The Sheriff must have been lying about [not] putting the gun in Calvin Cherry's holster." After defendant's objection to this remark was sustained the jury was excused and defendant, contending the prosecutor's remarks were so prejudicial that they deprived him of a fair trial, moved for a mistrial. His motion was denied; the trial court then instructed the jury that it "should not consider the [prosecutor's] remarks about whether someone was lying or not."

The control of argument of counsel is left primarily to the sound discretion of the trial judge who properly allows counsel wide latitude to argue all the facts and reasonable inferences presented by the evidence together with the law applicable thereto. *State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975); *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975); *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974), *death sentence vacated,* 428 U.S. 902 (1976). This Court has held, however, that it is "improper for a lawyer in his argument to assert his opinion that a witness is lying. He can argue to the jury that they should not believe a witness, but he should not call him a liar." *State v. Miller,* 271 N.C. 646, 659, 157 S.E. 2d 335, 345 (1967).

The prosecutor's remarks here complained of were not prohibited by this rule. By them he did not call anyone a liar or intimate that in his opinion any witness was a liar. His argument was that if the jury believed the defendant, then it would have to conclude that other witnesses including the sheriff had lied. We see nothing inappropriate in this argument. *State v. Noell, supra,* 284 N.C. 670, 696, 202 S.E. 2d 750, 767. Even if there was some slight impropriety, it was rendered harmless by the trial court's curative instructions. *State v. Britt, supra,* 288 N.C. 699, 220 S.E. 2d 283; *State v. White,* 286 N.C. 395, 211 S.E. 2d 445 (1975).

## VII.

Defendant assigns as error the trial judge's failure in his final charge to the jury to state correctly the law applicable to warrantless entries by police officers into private dwellings for the purpose of making an arrest. Since, as we have already demonstrated, Officer Cherry's warrantless entry into Shirley Avery's home even if unlawful constituted no defense to the homicide charge, the trial judge need not have instructed on the point at all. The trial judge, as we read his instructions, did not present the possibility of an unlawful entry as a defense to the murder charge. He was simply telling the jury under what circumstances, generally speaking, an officer may enter a dwelling without a warrant to make an arrest. *See* G.S. 15A-401(e) for our statute setting out these circumstances. The instructions, not being material to any issue in the case, were mere surplusage. Even if erroneous, therefore, they did not prejudice defendant.

Defendant in his final assignment of error asks this Court to carefully review the record to evaluate the cumulative effect of the assignments of error brought forward. We have done so and are satisfied that defendant received a fair trial free from prejudicial error.

No error.

Justice MEYER did not participate in the consideration and decision of this case.