STATE OF NORTH CAROLINA v. LAWRENCE MORRIS LYSZAJ

No. 712A84

(Filed 13 August 1985)

**1. Criminal Law § 91— motion for speedy trial dismissal—properly denied**

   Defendant's Speedy Trial Act motion to dismiss was properly denied where defendant's claim that he was served with a fugitive warrant in March of 1981 was not supported by the record presented on appeal; it was apparent from the record that defendant was not served with criminal process until December 15, 1983; 241 days elapsed before his trial on August 13, 1984; and 132 days were excludable for defendant's motions and for continuances granted for the ends of justice, leaving a total of 109 days. G.S. 15A-701(b)(7), G.S. 15A-701(b)(1)(d), G.S. 15A-701(a)(1).

---

**State v. Lyszaj**

2. **Constitutional Law § 53— speedy trial—delays attributable to defendant**

Defendant was not denited his constitutional right to a speedy trial where much of the considerable delay was attributable to motions on behalf of defendant and there was nothing in the record other than defendant's bald assertions to indicate that he desired a speedy trial or that he was prejudiced by the delay. Sixth Amendment to the Constitution of the United States.

3. **Criminal Law § 91— Interstate Agreement on Detainers—motion for speedy trial dismissal—properly denied**

There was no error in the denial of defendant's motion for a speedy trial dismissal under the Interstate Agreement on Detainers, which requires trial within 120 days of the arrival of defendant in the receiving state, where defendant had been imprisoned in Virginia, temporary custody was granted to North Carolina on December 15, 1983, and defendant was not tried until August 13, 1984, 241 days later. All but the initial 53 days were properly excluded where the delays were for a good cause shown in open court with defendant or his attorney present. G.S. 15A-761.

4. **Criminal Law § 87.1— prosecutor's leading question—no abuse of discretion**

There was no abuse of discretion where the trial court permitted the prosecutor in a prosecution for armed robbery, conspiracy to commit armed robbery, and first degree burglary to ask a witness if her identification of defendant was independent of any photographs she may have seen. Permitting leading questions is within the discretion of the trial court and the exercise of that discretion will not be reversed on appeal absent abuse of discretion.

5. **Criminal Law §§ 66.9, 66.14— pretrial photographic identification—not impermissibly suggestive—in-court identification of independent origin**

In a prosecution for armed robbery, conspiracy to commit armed robbery, and first degree burglary, pretrial identification procedures were not so impermissibly tainted as to give rise to a substantial likelihood of irreparable misidentification and the in-court identifications of defendant were of independent origin where two white males entered the home of Lloyd Turner and his wife, both Mr. and Mrs. Turner sat in the den with the first man to enter their home for approximately forty-five minutes while the second man went through the house, the first man was sitting directly in front of Mr. Turner and beside Mrs. Turner on the couch within three or four feet of both of them, there was a light on in the den which was bright enough to enable both Mr. and Mrs. Turner to see clearly the features of the first man, two groups of six photographs each were exhibited to Mr. and Mrs. Turner a few days later and each separately picked out defendant's picture, the sheriff stated to the Turners in presenting the pictures "look through these and see if you recognize one or both of the men who robbed you," and Mr. and Mrs. Turner had gone to Virginia on two occasions and positively identified defendant as the first man to enter their house the night they were robbed.

6. **Burglary and Unlawful Breakings § 5.2— burglary—nighttime—early evening hours sufficient**

The trial court correctly denied defendant's motions to dismiss a burglary charge, based on the contention that the nighttime element of burglary was in-

tended to protect people asleep in their homes and was not meant to be extended to the early evening hours, where the victims testified that the crime occurred at approximately 8:30 p.m. on December 9 and one victim testified that it was after dark when defendant arrived at their home.

APPEAL by the defendant from judgments entered by *Judge J. Herbert Small* at the August 13, 1984 Criminal Session of Superior Court, PASQUOTANK County.

The defendant was charged in separate bills of indictment with armed robbery, conspiracy to commit armed robbery, and first degree burglary. He entered a plea of not guilty to each charge. The jury found the defendant guilty of all the offenses charged. By judgments entered August 15, 1984, the defendant was sentenced to life imprisonment for his conviction for armed robbery, life imprisonment for his conviction for first degree burglary, and ten years imprisonment for his conviction for conspiracy to commit armed robbery.

The defendant appealed his convictions for armed robbery and first degree burglary and the resulting life sentences to the Supreme Court as a matter of right. Heard in the Supreme Court June 11, 1985.

*Lacy H. Thornburg, Attorney General, by Grayson G. Kelley, Assistant Attorney General, for the State.*

*James A. Beales, Jr., for the defendant-appellant.*

MITCHELL, Justice.

The defendant's primary argument is that his statutory and constitutional rights to a speedy trial were violated. He also contends that the trial court erred in permitting the prosecutor to ask a leading question. Finally, the defendant contends that the trial court erred in allowing the first degree burglary charge to go to the jury because the evidence was insufficient to support a finding that the crime in question occurred at night.

The record on appeal indicates that criminal warrants were issued on December 16, 1980, charging the defendant with armed robbery, conspiracy to commit an armed robbery, and first degree burglary in Pasquotank County, North Carolina. Early in 1981, the defendant was incarcerated on unrelated charges in the

prison system of the State of Virginia. The defendant was still in custody there on April 26, 1982, when the Grand Jury of Pasquotank County returned true bills of indictment against the defendant for the same crimes charged in the 1980 warrants.

The defendant remained in custody in Virginia until December 15, 1983, when temporary custody of him was granted to the State of North Carolina under the Interstate Agreement on Detainers. N.C.G.S. 15A-761 to 767. At that time he was arrested under the North Carolina warrants. After several delays, the defendant's case was called for trial at the August 13, 1984 Session of Criminal Superior Court for Pasquotank County. The State offered evidence which tended to show that two men entered the home of Lloyd and Betty Turner at about 8:30 p.m. on December 9, 1980, and robbed them at gunpoint. During the trial the Turners identified the defendant as one of the men. The defendant offered alibi evidence to the effect that he was in the Norfolk, Virginia area on the date in question.

On March 14, 1984, the defendant filed a motion to dismiss under the provisions of the Speedy Trial Act, N.C.G.S. 15A-701, *et seq.*, and the Constitution of the United States. On June 14, 1984, Judge Peel denied this motion. Judge Watts granted the defendant's motion to continue from February 7, 1984 through March 19, 1984, because counsel had not had time to prepare and because Judge Watts had been District Attorney in charge of these cases at the time the defendant was indicted. Judge Peel granted the State's motion to continue from March 19, 1984 through April 9, 1984, on the grounds that defense counsel needed more time to prepare his pretrial motions, the trial of other cases prevented the trial of this case during the session, and a judge's conference had been scheduled for Thursday and Friday of that term. Judge Peel granted another motion by the State to continue from April 14, 1984 to April 16, 1984, due to the defendant's inability to go forward on his pretrial motions. The final continuance from April 18, 1984 through May 14, 1984, was granted for the defendant by Judge Peel because the defense counsel had not had adequate time to prepare the pretrial motions.

On August 10, 1984, the defendant filed a motion to dismiss under the provisions of the Interstate Agreement on Detainers, G.S. 15A-761 to 767, alleging that he had been denied his right to

a speedy trial. Judge Small denied this motion in an order filed on August 16, 1984. The defendant's trial began on August 13, 1984.

[1] In his first assignment of error, the defendant contends that the trial court improperly denied his motion to dismiss under the Speedy Trial Act. We conclude that the defendant has not shown that the timing of his trial violated the provisions of the Act.

N.C.G.S. 15A-701(a)(1) provides that the trial of a defendant charged with a criminal offense shall begin within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last. The defendant contends that he was served with criminal process when he was served with a fugitive warrant in March, 1981. Therefore, according to the defendant, the event which should trigger the running of the statutory period was the indictment on April 26, 1982. The defendant argues that since that date he has desired to return voluntarily to North Carolina to face these charges. He alleges that the long delay in his return was caused by the lack of a diligent and good faith effort by North Carolina authorities to secure his return.

The defendant, however, produced no evidence of the existence or service of any fugitive warrant or of a written waiver of extradition. Our review is limited to what is presented in the record on appeal. *Long v. City of Charlotte*, 306 N.C. 187, 293 S.E. 2d 101 (1982); *State v. Morgan*, 225 N.C. 549, 35 S.E. 2d 621 (1945). Relying on the record, it is apparent that the defendant was not served with criminal process until the warrants for his arrest were executed on December 15, 1983. It was on that date then that the 120 day statutory period commenced.

A period of 241 days elapsed between December 15, 1983, and the defendant's trial, which began on August 13, 1984. Certain exclusions, however, may be made under the Speedy Trial Act from this time period.

G.S. 15A-701(b)(1)(d) provides that delays resulting from hearings on any pretrial motions or the granting or denial of such motions be excluded from the computation of the 120 day period. Included in this excluded period is "all delay from the time a motion or other event occurs that begins the delay until" a final ruling on the motion or a final resolution of the event causing the delay.

The defendant made two motions to dismiss. The first was filed on March 8, 1984, and was ruled upon on June 14, 1984. Therefore, exclusion of a period of 99 days from the time requirements of the Act was proper. The second motion was filed on August 10, 1984, and was ruled upon on August 16, 1984. The defendant's trial, however, began on August 13, 1984, so only three of these days should be excluded.

G.S. 15A-701(b)(7) provides that exclusions may also be made for delays "resulting from a continuance granted by any judge if the judge granting the continuance finds that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial and sets forth in writing in the record of the case the reasons for so finding." In the present case, continuances were granted on this basis for a total of 95 days. However, since only 30 of these days did not overlap the period during which the first motion to dismiss was pending, only those 30 days can be excluded from the 120 day period.

Taking all of the foregoing excludable days into account, the 241 day period between the service of criminal process and the trial is decreased by 132 days to a total period of 109 days. Thus, the defendant's trial fell within the 120 day period prescribed by the Speedy Trial Act.

[2] The defendant also assigns as error the denial of his constitutional right to a speedy trial. Both the fundamental law of this State and the Sixth Amendment to the Constitution of the United States guarantee those formally accused of crime the right to a speedy trial. *State v. Avery*, 302 N.C. 517, 276 S.E. 2d 699 (1981). *State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976), *cert. denied*, 429 U.S. 1049 (1977); *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969). The primary factors to consider in determining whether this right has been violated are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514 (1972); *State v. McKoy*, 294 N.C. 134, 240 S.E. 2d 383 (1978); *State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976), *cert. denied*, 429 U.S. 1049 (1977); *State v. Smith*, 289 N.C. 143, 221 S.E. 2d 247 (1976).

State v. Lyszaj

The defendant points to the three and one-half year delay between the issuance of the initial warrants and his trial and argues that the causes for the delays were largely outside of his control. He claims that he was willing to return to North Carolina but did not as a result of North Carolina's failure to make a good faith effort to obtain his presence. He also points out that he did not waive his right to a speedy trial. Finally, the defendant argues that the delay prejudiced his defense in that he was required at trial to rely on his memory of events that had taken place over three years earlier.

Although the delay was considerable, much of it was attributable to the motions on behalf of the defendant. Also, there is nothing in the record other than bald contentions by the defendant to indicate that he desired a speedy trial, or that he was prejudiced in any way by the delay. This assignment is without merit.

[3] The defendant next assigns as error the denial of his motion to dismiss for the State's failure to provide him a speedy trial as required by the Interstate Agreement on Detainers, N.C.G.S. 15A-761, Article IV(c), which states:

In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The defendant had been imprisoned in Virginia. Under the Interstate Agreement on Detainers, temporary custody of the defendant was granted to the State of North Carolina on December 15, 1983. The defendant asserts that his trial did not take place within 120 days of his arrival in North Carolina. As noted earlier, the defendant's trial did not take place until August 13, 1984, some 241 days after his arrival.

The trial court concluded that the trial of the defendant had been delayed from February 6, 1984 until August 13, 1984 for good cause shown in open court with the defendant or his attorney present and excluded that period of time in computing the 120 days from the time of his arrival in North Carolina. We agree.

Between December 15, 1983, and February 6, 1984, a period of 53 days of the 120 days ran. The cases were continued by the trial court for good cause shown and on the defendant's motion, from February 7, 1984 until March 19, 1984. The defendant set forth two grounds for his motion. First, that counsel had not had adequate time to prepare the cases for trial, and secondly, the presiding judge should recuse himself since he was the elected District Attorney during the investigation of the defendant's case and at the time the defendant was indicted. Due to motions filed by the defendant to dismiss the cases for want of a speedy trial and to obtain the attendance of out-of-state witnesses, the trial court thereafter continued the cases for good cause shown, from term to term until August 6, 1984. The trial court then found it necessary to continue the trial from August 6, 1984 to August 13, 1984, due to the assignment of Judge Watts to the August 6, 1984 session, since he had previously recused himself from the trial of the defendant. The trial court therefore was correct when it excluded all but the initial 53 days of the period between the time the defendant was returned to North Carolina and the date of his trial. This time period was well within the 120 day period prescribed by the Interstate Agreement on Detainers.

[4] Under his next assignment of error the defendant contends that the trial court improperly allowed the prosecutor to ask a leading question on the issue of the identity of the defendant as the perpetrator of the crimes charged. The prosecutor asked the witness, Lloyd Turner: "Is your identification here today of the defendant as the first man you saw on December 9, 1980, independent of any photographs that you may have seen?" The defendant argues that this question should not have been allowed in this form and that its admission caused irreparable harm to the defendant. We disagree.

It is within the discretion of the trial court whether counsel shall be permitted to ask leading questions. The exercise of such discretion, in the absence of an abuse thereof, will not be reversed on appeal. *State v. Hairston*, 280 N.C. 220, 185 S.E. 2d 633 (1972); *State v. Beatty*, 226 N.C. 765, 40 S.E. 2d 357 (1946). A ruling committed to a trial court's discretion will be upset only upon a showing that it could not have been the result of a reasoned decision. *White v. White*, 312 NC. 770, 324 S.E. 2d 829 (1985). *See Clark v. Clark*, 301 N.C. 123, 271 S.E. 2d 58 (1980). No such show-

ing has been made in the present case, and this assignment is overruled.

[5] In his next assignment of error the defendant argues that the trial court erred in allowing the testimony of Lloyd Turner and Betty Turner identifying him at trial as the man who had robbed them. He contends that the evidence resulted from pretrial identification procedures which were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. The defendant maintains that the pretrial photographic lineup was unnecessarily suggestive because the police made comments to the Turners suggesting that a photograph of their burglar was in the lineup and because the nature of the photographs was highly suggestive. As a result, the defendant argues that the in-court identifications of him by the Turners should have been excluded at trial. We disagree.

Whether a pretrial identification procedure is so suggestive as to give rise to a very substantial likelihood of irreparable misidentification must be determined by a consideration of all of the circumstances in each case. *Simmons v. United States*, 390 U.S. 377 (1968). Even though a pretrial identification procedure may be suggestive, it will be impermissibly suggestive only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification. The factors to be considered include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98 (1977); *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983); *State v. Thompson*, 303 N.C. 169, 277 S.E. 2d 431 (1981).

A *voir dire* examination was held upon the defendant's objection to the identification testimony. The trial court found upon competent and substantial evidence that on the evening of December 9, 1980, two white males entered the home of Lloyd Turner and his wife Betty Turner. Both Mr. and Mrs. Turner sat in the den with the first man to enter their home for approximately forty-five minutes while the second man went through the house. The first man was sitting directly in front of Mr. Turner and be-

side Mrs. Turner on the couch. He was within three or four feet of both of them. There was a light on in the den which was bright enough to enable both Mr. and Mrs. Turner to see clearly the features of the first man.

A few days later, Sheriff Sawyer exhibited to Mr. and Mrs. Turner two groups of six photographs each. In one group was the picture of the defendant, and in the second group was a picture of another man identified as Robert Huntoon. Mr. and Mrs. Turner each separately picked out the defendant's picture in the first group of pictures as the first man to enter their house when they were robbed. Each identified Huntoon as the second man to enter the house.

When presenting the pictures to the Turners for viewing, the sheriff stated to each, "Look through these and see if you recognize one or both of the men that robbed you." He did not suggest that they should pick any particular picture.

On two occasions Mr. and Mrs. Turner went to Virginia and positively identified the defendant as being the first man to enter their home on the night they were robbed. The last such occasion was in December, 1983.

The trial court concluded that the in-court identifications of the defendant by Mr. and Mrs. Turner were based upon their recollection of what they saw on December 9, 1980, while they were being robbed and held at gunpoint. Neither was influenced by any photographic lineup or by any view of the defendant they may have had while he was in custody. The trial court then allowed the in-court identifications of the defendant by Mr. and Mrs. Turner to be admitted.

Upon careful examination of the record, the briefs, the transcript and the photographic array viewed by the Turners, we have concluded that the pretrial identification procedure was not impermissibly suggestive. *See Simmons v. United States*, 390 U.S. 377 (1968); *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983). However, even if the pretrial identification procedure was impermissibly suggestive, we find adequate support for the trial court's ruling that the in-court identifications were admissible as being of independent origin based solely upon Mr. and Mrs. Turner's observations at the scene of the crime. The factors to be

considered in determining whether in-court identifications are admissible are the same as those used to evaluate the likelihood of irreparable misidentification during pretrial identification procedures. *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983); *State v. Thompson*, 303 N.C. 169, 277 S.E. 2d 431 (1981). Applying those factors we find more than adequate evidence in the record to support the trial court's holding that the Turners' in-court identifications were admissible as being of independent origin. We are bound therefore by the trial court's ruling. *State v. White*, 311 N.C. 238, 316 S.E. 2d 42 (1984); *State v. Daniels*, 300 N.C. 105, 265 S.E. 2d 217 (1980). This assignment of error is overruled.

[6]  In his final assignment of error, the defendant contends that the trial court erred by denying his motion to dismiss the charge of burglary on the ground that there was insufficient evidence to support a finding that the crime occurred during the nighttime. This contention is without merit.

In testing the sufficiency of the evidence to sustain a conviction and to withstand a motion to dismiss, the reviewing court must determine whether there is substantial evidence of each essential element of the offense and that the defendant was the perpetrator. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). To warrant a conviction of burglary in either the first or second degree, the State must show *inter alia* that the crime charged occurred during the nighttime. *State v. Cox*, 281 N.C. 131, 187 S.E. 2d 785 (1972). The law considers it to be nighttime when it is so dark that a person's face cannot be identified except by artificial light or moonlight. *State v. Frank*, 284 N.C. 137, 200 S.E. 2d 169 (1973); *State v. McKnight*, 111 N.C. 690, 16 S.E. 319 (1892).

The defendant recognizes that both Lloyd Turner and Betty Turner testified that the crime occurred at approximately 8:30 p.m. on December 9, 1980, and that Betty Turner testified that it was after dark when the defendant arrived at their home. The defendant, however, contends that the nighttime element of the crime of burglary was intended to protect people who are asleep in their homes and was not meant to be extended to the early evening hours. We do not agree and instead conclude that there was substantial evidence introduced at trial tending to show that the offense charged occurred during the nighttime. *See State v. Smith*, 307 N.C. 516, 299 S.E. 2d 431 (1983).

The defendant received a fair trial free from prejudicial error.

No error.