STATE OF NORTH CAROLINA v. WENDELL RONNIE BRANCH

No. 7816SC1148

(Filed 1 May 1979)

1. **Constitutional Law § 51— speedy trial—twenty-three months between arrest and trial—no prejudice to defendant shown**

Though a twenty-three month delay between defendant's arrest and trial, seventeen months elapsing after his request for a speedy trial was unduly long, and though defendant did not at any time waive his right to a speedy trial, defendant nevertheless failed to show that the prosecution's unexplained delay in bringing him to trial prejudiced him in his ability to present his defense so as to require dismissal of the charges against him, since the only evidence of prejudice was the unavailability of defendant's father to testify due to a stroke he had suffered, but there was no indication as to what the father's testimony would have been or how it would have related to defendant's defense.

2. **Criminal Law § 79— statements by co-conspirators—prior showing that conspiracy existed**

Once the State has established a prima facie showing of a conspiracy, then the acts or declarations of co-conspirators made in the course of and in furtherance of the conspiracy are admissible to identify others participating in the conspiracy; therefore, the trial court did not err in allowing various statements of defendant's co-conspirators into evidence against him after two persons had given testimony concerning the existence of the conspiracy, and the State had shown the involvement of the witness, whose statements tended to incriminate the defendant, in the conspiracy.

APPEAL by defendant from *Friday, Judge.* Judgment entered 3 August 1978 in Superior Court, ROBESON County. Heard in the Court of Appeals on 27 March 1979.

Defendant was charged in a proper indictment with felonious conspiracy to steal 22,326 pounds of tobacco belonging to J. P. Taylor Tobacco Company, Inc., having a value of $26,532.01, and a 1969 International Tractor and Trailer belonging to Carroll Transfer, Inc., having a value of $17,000.00. Upon his plea of not guilty, the State presented evidence tending to show the following:

In August of 1976 Carroll Transfer, Inc., was an interstate trucking firm involved in the business of transporting, among other things, tobacco from tobacco warehouses in North Carolina to tobacco companies for processing. James Earl Roper was employed as a truck driver for Carroll Transfer. On 15 August

1976, Roper was approached by James Watson, who sought his assistance in stealing a truckload of tobacco. Roper agreed to meet Watson at a truck stop in St. Pauls, North Carolina, on 19 August 1976 and turn over his tractor-trailer loaded with tobacco to Watson and others. Roper was to receive $2,000 for his part in the transaction. Roper subsequently informed his employer and the State Bureau of Investigation of the contacts made by Watson and was instructed to cooperate with Watson. On 19 August 1976, Watson and James Thomas Jones rode to a farm in Hoke County leased by the defendant Branch. A discussion took place among the three men as to the best route to bring the tractor-trailer of tobacco onto the property. The defendant indicated that he would have some men remove a small tree that was an obstacle. They also discussed the best place to park the truck near an old abandoned farm house on the property where the tobacco was to be unloaded. The defendant indicated that he would get some men to clean out the house so that the tobacco could be put in it that night, and that Leno Locklear and some others would unload it from the truck that evening. The defendant was to pay Jones $8,000 for the tobacco. Watson and Sidney Drakeford later returned to the farm in order that Drakeford would have correct directions. Drakeford left his car at the farm and accompanied Watson to the truck stop at St. Pauls. Roper drove the tractor-trailer of tobacco to the truck stop and was met there by Watson and Drakeford and was given $100.00. Drakeford directed him to drive the truck toward Raeford, North Carolina, and once there to drive north on U. S. Highway 401. Roper was finally directed to the farm leased by the defendant Branch. Roper parked the truck near an abandoned house and gave the bills of lading to Drakeford.

Both Roper and the truck stop at St. Pauls were under SBI surveillance on 19 August 1976. The SBI had followed the truck using an airplane and a remote control light affixed to the top of the truck enabling it to be visible from the air. In addition a large number of SBI agents followed the truck using unmarked vehicles. When the agents arrived at the farm, the straps to the canvas securing the tobacco had been cut, but the truck had not been unloaded. The defendant Branch was subsequently arrested at the home of the parents of James Jones.

The defendant offered evidence tending to show the following:

On 19 August 1976, defendant was the assistant principal of Scurlock Elementary School in Raeford, and also owned a small farm in Arabia where he farmed tobacco. The defendant lost his job because a load of tobacco had been found in the vicinity of a farm that he had rented, the SBI had arrested him and implicated him as being part of a conspiracy to steal a load of tobacco, and this was publicized in the newspapers. The defendant did not have any part in a conspiracy to steal the tobacco. The defendant knew James Jones, but did not know James Watson or Sidney Drakeford. On the night of 19 August 1976, the defendant was at a curing barn on the farm he leased, but had no knowledge that a tractor-trailer of tobacco had been driven onto the farm property. The defendant has had some business dealings with James Jones, relating to some repair work on a tractor.

The jury found defendant guilty on the felonious conspiracy count, and from a judgment entered on the verdict imposing a sentence of four to ten years, he appealed.

The facts necessary to an understanding of the speedy trial issue are contained in the following numbered paragraphs:

1. Defendant was arrested on 25 August 1976 upon a warrant charging him with felonious conspiracy to steal 22,000 pounds of tobacco and felonious larceny of the tobacco.

2. The preliminary hearing for the defendant was postponed twice by the State for reasons not appearing in the record, and on 23 September 1976, a preliminary hearing was held and defendant was bound over to Superior Court.

3. On 5 October 1976, Mr. Ben G. Floyd, Jr., the Clerk of Superior Court, sent a letter to defendant's counsel informing him that the case was calendared for arraignment and that a bill of indictment would not be returned by the Grand Jury until 11 October 1976. The defendant was served a notice to appear in court on 11 October 1976 for arraignment. On that date, defendant appeared in court with his counsel, but his case was not on the calendar.

4. On 3 November 1976, defendant filed a motion for discovery seeking various information with regard to the State's case against him.

5. On 7 November 1976 and on 6 December 1976, defendant again appeared in court with counsel for arraignment but a bill of indictment had not yet been sent to the Grand Jury.

6. On 25 January 1977, defendant filed a written motion for a speedy trial, a copy of which was mailed to the district attorney.

7. On 1 July 1977, W. Allen Webster, who had represented Kenneth Jacobson, an alleged co-conspirator of the defendant, at the time of the probable cause hearing, became a member of the district attorney's staff.

8. On 10 October 1977, three true bills of indictment were returned by the Grand Jury charging the defendant with felonious conspiracy to steal 22,326 pounds of tobacco and a tractor-trailer truck, felonious larceny of the tobacco, and felonious larceny of the truck. From 23 September 1976 to 10 October 1977, there were 14 Sessions of Superior Court in Robeson County.

9. On 2 November 1977, defendant filed a motion for a bill of particulars and a motion to dismiss under G.S. § 15A-954 on the grounds that defendant had been denied his right to a speedy trial.

10. On 7 November 1977, a hearing was held before Judge Thomas H. Lee on defendant's various motions. Judge Lee denied the defendant's motion for a speedy trial in the following Order:

> The Court finds and rules that a delay from August 25, 1976, until the present day is not such an unusual and undue delay so as to deprive the defendant of his Constitutional Right to a speedy trial under the Constitution of the United States and the Constitution of North Carolina. The Court further holds that the defendant herein has not carried the burden of establishing that the delay was due to the neglect or the willfullness of the prosecution. The Court holds, however, that the defendant has established that the delay has caused him great prejudice in his personal life and, therefore, the Court in its discretion, orders that the cases be tried during

the next term of the Superior Court of Robeson County; that is the term—two week term beginning December the 12th, or be dismissed, unless otherwise continued by mutual agreement of the State and the defendant.

11. On 15 November 1977, defendant filed a motion for a special prosecutor on the grounds that W. Allen Webster, formerly counsel for one of defendant's alleged co-conspirators, was now on the district attorney's staff. On 18 November 1977, Judge Thomas H. Lee granted the defendant's motion.

12. On 15 July 1978, defendant's father suffered a stroke and became incapacitated to such an extent that he was unable to testify at trial.

13. On 31 July 1978, defendant's case came on for trial at a Special Term of the Superior Court of Robeson County. Prior to trial, defendant again made his motion to dismiss on the grounds that he had been denied his right to a speedy trial. Judge John R. Friday denied this motion in the following Order:

> The Court is of the opinion that by the defendant having been on bond and having had an opportunity to adequately prepare his defense, I'm going to deny that motion to dismiss . . . [T]here was a stipulation by the State that the defendant's father was ill, but the defendant has testified that this serious illness has occurred within the last two weeks; that the defendant knew or had cause to know that this trial was docketed for the special term of Court and that no mention or no effort was made to preserve the father's testimony; that the Court allowed the defendant to testify that his father was critically ill before the Jury, and that was the reason for his absence. Therefore, the Court does not find that the defendant is prejudiced by the delay and will deny the motion.

14. Defendant was found guilty of felonious conspiracy and on 3 August 1978 a judgment was entered on the verdict imposing a prison sentence of four to ten years.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Stephens, for the State.*

*James R. Nance, Jr., and John W. Campbell for defendant appellant.*

HEDRICK, Judge.

[1]   Defendant first assigns as error the trial court's denial of his motion to dismiss for failure of the State to grant him a speedy trial. The right of every person formally accused of a crime to a speedy and impartial trial is secured by the fundamental law of this State, *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309 (1965), and guaranteed by the Sixth Amendment to the federal constitution, made applicable to the states by the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967); *State v. McKoy*, 294 N.C. 134, 240 S.E. 2d 383 (1978). In determining whether an accused has been denied his right to a speedy trial, the courts have weighed four factors: (1) the length of the delay, (2) the cause of the delay, (3) waiver by the defendant, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972); *State v. McKoy*, *supra*; *State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976). Whether a speedy trial has been afforded depends on the circumstances of each particular case, and the burden is on the defendant who asserts denial of a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. *State v. McKoy*, *supra*; *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969).

With regard to the length of the delay, the evidence in the present case discloses a delay of fourteen months from the time of defendant's arrest on 25 August 1976 to the time of his indictment on 10 October 1977. Eight days after defendant's motion to dismiss for lack of a speedy trial was denied, he filed a motion for a special prosecutor, and three days after this motion was filed it was granted. The record discloses that defendant's case was not called for trial until 31 July 1978, approximately nine months after his motion for a special prosecutor was granted. The length of the delay between defendant's arrest and trial, twenty three months, is unusual.

With regard to the second factor, the reason for the delay, the record contains little evidence of explanation. Ordinarily, the burden is on the defendant to show that the delay "was due to the wilful neglect of the prosecution and could have been avoided by a reasonable effort." *State v. McKoy*, 294 N.C. at 141-42, 240 S.E. 2d at 389. The courts of this State, however, have recognized

an exception to this general rule where the defendant shows a long period of delay. Thus, in the present case, once the defendant showed a seventeen month delay after his request for a speedy trial, the State should have presented evidence fully explaining the reasons for the delay. *See State v. Wright*, 290 N.C. at 51, 224 S.E. 2d at 628. In the present case, the State has failed to offer any explanation for the delay.

The record is also largely silent with regard to the third factor: waiver on the part of the defendant. The defendant made a motion for a speedy trial on 25 January 1977, some five months after his arrest and seven months prior to his indictment. The first hearing on defendant's motion for a speedy trial was on 7 November 1977, and resulted in its denial. Shortly thereafter defendant made a motion for a special prosecutor that was granted. There is no evidence that the defendant made any efforts to have his case called for trial during the nine months after his motion for a special prosecutor was granted. Nevertheless, we are of the opinion that the defendant did not at any time waive his right to a speedy trial.

The final counterbalancing factor is the fourth: prejudice to the defendant. At the first hearing on his motion to dismiss, the defendant presented evidence tending to show that he had lost his job as a result of the publicity surrounding his arrest. He did not present any evidence tending to show that he was prejudiced in his ability to prepare or present his defense. The record discloses that the defendant was free on a substantial bond during this period of time and was engaged in the business of farming. At a second hearing on his motion to dismiss, the only evidence presented of any prejudice was the unavailability of defendant's father to testify at trial due to a stroke suffered approximately two weeks earlier. The defendant testified at the second hearing that his father was with him on 19 August 1976, the night that the tractor-trailer was driven onto the farm the defendant leased. Presumably, defendant's father would have offered testimony to corroborate the testimony defendant gave at trial. There is nothing in the record, however, to indicate what testimony the witness would have given, or how the testimony would have related to his defense to the conspiracy charge. The burden is on an accused who asserts denial of a speedy trial to show that the delay has prejudiced him in his ability to defend

himself, and prejudice will not be presumed merely upon a show-
ing of a long period of delay. *See State v. McQueen*, 295 N.C. 96,
244 S.E. 2d 414 (1978). Balancing the above four factors, we think
the defendant has failed to show that the prosecution's unex-
plained delay in bringing him to trial prejudiced him in his ability
to present his defense so as to require dismissal of the charges
against him.

[2]   Defendant next contends that the trial court erred by allow-
ing various witnesses to give hearsay evidence. Hearsay has been
defined as testimony of an out-of-court statement offered to prove
the truth of the matters asserted therein, and thus resting for its
value upon the credibility of the out-of-court asserter. McCormick
on Evidence § 246, at 584 (2d ed. 1972). *See also* 1 Stansbury's
N.C. Evidence § 138 (Brandis rev. 1973). A careful examination of
the numerous exceptions relied upon by the defendant reveals
that none of the challenged testimony was excludable on the basis
of hearsay since it either was not offered to prove the truth of
the matters asserted therein, involved out-of-court statements
made by the witness himself, or was offered for purposes of cor-
roboration. No useful purpose would be served by further
elaboration on these exceptions.

Defendant's final contention is that the trial court erred in
allowing various statements of defendant's co-conspirators into
evidence against him without the prosecution first offering
evidence to show that he was also involved in the conspiracy. In
*State v. Conrad*, 275 N.C. 342, 348, 168 S.E. 2d 39, 43 (1969), the
Court stated:

> The general rule is that when evidence of a prima facie
> case of conspiracy has been introduced, the acts and declara-
> tions of each party to it in furtherance of its objectives are
> admissible against the other members. Consideration of the
> acts or declarations of one as evidence against the co-
> conspirators should be conditioned upon a finding: (1) a con-
> spiracy existed; (2) the acts or declarations were made by a
> party to it and in pursuance of its objectives; and (3) [they
> were made] while it was active, that is, after it was formed
> and before it ended. [Citations omitted.]

*See also State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975).

In the present case, the trial judge did not allow into evidence statements of co-conspirators against the defendant Branch until two persons had given testimony concerning the existence of the conspiracy, and the State had shown the involvement of the witness, whose statements tended to incriminate the defendant, in the conspiracy. It has been held that the testimony of a single co-conspirator is competent to establish the conspiracy, since it is seldom possible to show the existence of a conspiracy by direct proof. *State v. Carey*, 285 N.C. 497, 206 S.E. 2d 213 (1974); *State v. Bindyke, supra*. Once the State has established a *prima facie* showing of a conspiracy, then the acts or declarations of co-conspirators made in the course of and in furtherance of the conspiracy are admissible to identify others participating in the conspiracy. Such was the situation in the present case.

We hold defendant had a fair trial free from prejudicial error.

No error.

Judges PARKER and CARLTON concur.