STATE OF NORTH CAROLINA v. MARTINA ELIZABETH CLARK, DEFENDANT

No. COA09-63

(Filed 8 December 2009)

**1. Assault— with deadly weapon on government official— instruction on lesser included offense not given—plain error**

The trial court committed plain error in a prosecution for assault with a deadly weapon on a public official by not submitting to the jury the lesser included offense of assault on a government official. Defendant struck an officer with her truck as

the officer stood beside his patrol car, but there was a lack of significant injury to the officer or damage to the patrol car and a jury could conclude that the truck was not likely to produce death or great bodily harm under the circumstances of its use.

**2. Constitutional Law— speedy trial—record ambiguous**

The question of whether defendant was denied a speedy trial was remanded for an evidentiary hearing where the record was insufficient both on whether the issue was properly presented at trial and whether the factors in *Barker v. Wingo*, 407 U.S. 514, were satisfied.

Appeal by defendant from judgment entered 27 August 2008 by Judge James W. Morgan in Cleveland County Superior Court. Heard in the Court of Appeals 10 June 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Tawanda Foster-Williams, for the State.*

*Richard Croutharmel for defendant-appellant.*

GEER, Judge.

Defendant Martina Elizabeth Clark appeals from her convictions of (1) assault with a deadly weapon on a government official and (2) felony hit and run failure to stop with personal injury. We agree with defendant that the trial court committed plain error with respect to the assault charge in failing to instruct on the lesser included offense of misdemeanor assault on a government official. We, therefore, order a new trial on the assault charge.

With respect to both charges, defendant contends that she was denied her right to a speedy trial. Although we have carefully reviewed the record, we find the record ambiguous on the question whether defendant properly presented this issue to the trial court and, assuming that it was preserved, the record is inadequate to address the issue. We, therefore, remand for a determination whether defendant sufficiently presented her speedy trial objection to the trial court and, if so, for an evidentiary hearing to consider the factors set out in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972).

Facts

The State presented evidence tending to show the following facts. Patrol Sergeant Victor Haynes was on duty with the Shelby

Police Department on 26 July 2003. At approximately 5:30 p.m., he saw a dog fall off the back of a truck, landing in the middle of a busy street. Sergeant Haynes pulled his car over with his blue lights flashing and took the dog back to his patrol car.

While standing at his car with the rear door open trying to get the dog into the back of his vehicle, Sergeant Haynes heard an engine racing. Soon after, defendant struck Sergeant Haynes with her pick-up truck. The truck pushed Sergeant Haynes against the back of the patrol car, and the mirror or another object on the side of defendant's truck hit his elbow and back side. Sergeant Haynes slapped the back of the vehicle, trying to get defendant's attention. Sergeant Haynes experienced pain in his elbow.

Defendant continued to drive up the street and eventually backed into a driveway further down the road, still within Sergeant Haynes' view. Sergeant Haynes returned the dog to its owner and then proceeded up Monroe Street to where the truck was parked. When he approached defendant, she was angry and refused to give him her driver's license. When other officers arrived at the scene, defendant was yelling about a prior incident in which she had reported that her car was stolen, but Sergeant Haynes had determined that the car had actually been repossessed. When asked why she struck Sergeant Haynes with her truck, she responded by asking why he was not lying in the road or going to the hospital if he had been hit.

On 13 October 2003, a Cleveland County grand jury indicted defendant for (1) assault with a deadly weapon on a government official and (2) felony hit and run failure to stop with personal injury. Defendant waived her right to counsel and proceeded *pro se.* Defendant filed motions to dismiss on 30 December 2003, 10 February 2004, and 7 October 2004. The 7 October 2004 motion alleged a denial of defendant's right to a speedy trial.

The State then set the case for trial during the week of 8 November 2004. On 9 November 2004, the trial court called the case for trial. Although defendant asked to be heard on her motion to dismiss for violation of her right to a speedy trial, she also requested a continuance on the grounds that she had not received adequate notice of the trial date.

In an order dated 10 November 2004, the trial court denied defendant's 7 October 2004 motion to dismiss. The trial court concluded that the one-year delay was sufficiently long enough to require consideration of the *Barker* factors. The court then concluded that

defendant had not shown that the delay was the result of neglect or willfulness of the prosecution. According to the court, the court file did "not show anything except normal administrative delay in processing and bringing a felony case to trial." The trial court further found that although defendant had made a motion to dismiss on speedy trial grounds, she had also sought a continuance and, therefore, her demand for a speedy trial did not support dismissal. Finally, the trial court found that defendant had not been prejudiced by the delay since she had not suffered oppressive pretrial incarceration, and her defense had not been impaired.

On 17 November 2004, defendant purported to give notice of appeal "[p]ursuant to North Carolina-Appellant Rule 21(a)(1)" of the trial court's decision to deny her motion to dismiss. This Court deemed that notice to be a petition for writ of certiorari and denied the petition on 11 January 2005.

The record contains no indication of what, if anything, took place in the trial court regarding the charges between 11 November 2004 and 11 August 2006, when defendant filed another motion to dismiss, again claiming a denial of her right to a speedy trial. In the alternative, defendant requested a continuance and the appointment of standby counsel. The record does not contain any ruling on this motion prior to the actual trial.

On 6 October 2006, defendant was arrested for failure to appear. On 9 October 2006, defendant filed a handwritten letter requesting to be released from jail that the trial court treated as a habeas corpus motion. On 16 October 2006, the trial court conducted a habeas corpus hearing and found that defendant should not have been arrested for failure to appear. The trial court ordered defendant's release from jail following the hearing.

The record is silent as to what occurred in the trial court between October 2006 and 26 August 2008, when the case finally was tried. At the start of the trial, defendant handed some documents to the trial judge asking him to address, among other issues, her motion to dismiss. The record does not clearly indicate whether this motion to dismiss was the motion filed in August 2006 or, if not, what issues the motion raised. The trial court only stated: "Ms. Clark has handed me some concerns that she had and a number of reasons for a dismissal. I would say that I will address those that I could address prior to trial. These—all of these issues have been put before me before and [I] would DENY those motions to dismiss . . . ."

On 27 August 2008, defendant was found guilty of both assault with a deadly weapon on a government official and felony hit and run failure to stop with personal injury. The trial court sentenced defendant to a presumptive-range sentence of 13 to 16 months imprisonment. Defendant timely appealed to this Court.

I

[1] With respect to the conviction of assault with a deadly weapon on a government official, defendant contends that the trial court committed plain error in failing to instruct the jury on the lesser included offense of misdemeanor assault on a government official. "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." *State v. Millsaps*, 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002). "When determining whether there is sufficient evidence for submission of a lesser included offense to the jury, we view the evidence in the light most favorable to the defendant." *State v. Ryder*, 196 N.C. App. 56, 64, 674 S.E.2d 805, 811 (2009).

Because defendant did not request this instruction at trial, we review the issue for plain error. As the Supreme Court has explained:

"[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal quotation marks omitted) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513, 103 S. Ct. 381 (1982)).

Here, when the trial court instructed the jury on the charge of assault with a deadly weapon on a government official, it instructed the jury that it was required to determine if the automobile used in

the incident constituted a deadly weapon. Thus, the trial court necessarily concluded that the jury could, based on the evidence, conclude that the truck was not a dangerous weapon.

In *State v. Smith*, 186 N.C. App. 57, 650 S.E.2d 29 (2007), this Court addressed a similar situation. In *Smith*, the defendant had been charged with and convicted of assault with a deadly weapon on a government official. In addressing the defendant's argument that the trial court should have instructed the jury on the lesser included offense of misdemeanor assault on a government official, this Court stated initially: "[D]efendant argues that a trial court must submit the lesser-included offense of misdemeanor assault on a government official to the jury unless the court determines as a matter of law that the defendant did use a deadly weapon. We agree." *Id.* at 65, 650 S.E.2d at 35.

The Court noted that it had, previously in the opinion, held that the trial court had properly sent to the jury the question whether defendant's hands and the water in a river were deadly weapons when the State's evidence indicated that the defendant pushed an officer into the river and held his head underwater for 30 to 40 seconds. *Id.* at 64, 650 S.E.2d at 34. The Court then held that because the existence of a deadly weapon was a question for the jury, the jury, if instructed, could have concluded that the defendant did not use a deadly weapon and was only guilty of assault on a government official: "Having held that the trial court properly submitted to the jury the question of whether defendant's use of 'hands and water' was the use of a 'deadly weapon,' we further hold that the trial court erred by refusing to submit to the jury the lesser-included offense of misdemeanor assault on a government official." *Id.* at 66, 650 S.E.2d at 35-36.

Based on *Smith*, since the trial court, in this case, did not conclude that the truck was, as a matter of law, a deadly weapon, but rather left the question to be decided by the jury, the trial court should have instructed the jury on the lesser included offense of assault on a government official. The State does not dispute this analysis, but argues that any error was harmless because "[g]iven the speed and manner in which [defendant's truck] was used . . . it is a deadly weapon as a matter of law." Consequently, according to the State, the trial court should not have submitted to the jury the question whether the truck was used as a deadly weapon, and, therefore, no instruction on a lesser included offense was warranted.

In *State v. Batchelor*, 167 N.C. App. 797, 800, 606 S.E.2d 422, 424 (2005), this Court accepted the same argument made by the State in this case. In deciding whether the trial court should have submitted to the jury the lesser included offense of assault on a government official, the Court first noted that the question depended on whether the car involved in that case was considered a deadly weapon as a matter of law. *Id.* at 799-800, 606 S.E.2d at 424. If so, then the lesser included offense " 'need not have been submitted.' " *Id.* at 800, 606 S.E.2d at 424 (quoting *State v. Palmer*, 293 N.C. 633, 642, 239 S.E.2d 406, 412 (1977)). The Court defined the question on appeal as "whether or not an automobile driven at a high speed is a deadly weapon as a matter of law" and concluded "that it is." *Id.*

The Court pointed out that a deadly weapon is " '[a]ny instrument which is likely to produce death or great bodily harm, under the circumstances of its use.' " *Id.* (quoting *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924)). The Court asserted that "[t]he key element in determining whether or not a weapon is deadly per se is the manner of its use . . . ." *Id.* Thus, " '[t]he deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself.' " *Id.* (quoting *Smith*, 187 N.C. at 470, 121 S.E. at 737). An instrument is a deadly weapon as a matter of law only " '[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion . . . .' " *Id.* (quoting *Smith*, 187 N.C. at 470, 121 S.E. at 737). On the other hand, " 'where [the weapon] may or may not be likely to produce fatal results, according to the manner of its use[,] . . . its alleged deadly character is one of fact to be determined by the jury.' " *Id.* (quoting *Smith*, 187 N.C. at 470, 121 S.E. at 737).

In applying this test to the car at issue in *Batchelor*, this Court observed that "[a] car sitting idle may not be deadly," but concluded that the manner of the use of the car by the defendant in that case "clearly put the officers in danger of death or great bodily harm. The evidence showed that defendant drove his car directly towards Deputy Wiggins who was standing in the driveway, and defendant drove at a high rate of speed directly at the officers' vehicles in their lane of travel. Two cars had to take evasive action to avoid a head-on collision with defendant, and defendant crashed into the third car with the officer in it." *Id.* The Court concluded that this "evidence . . . leads to 'but one conclusion,' which is the deadly nature of defendant's use of the car," and, therefore, the trial court did not err

in not submitting to the jury the lesser charge of assault on a government official. *Id.*

In this case, we cannot conclude that the evidence leads to only one conclusion. Sergeant Haynes testified:

> Like I said, [as] I was trying to get the dog around the door into the car, I heard an engine racing. At that point, I looked and I saw a car—saw the tires of a vehicle moving right up against me. As I went to stand up, the vehicle struck me and pushed me against the back of the patrol car and the mirror or the object on the side of the car actually hit me on my elbow and the back side and pushed me up against my vehicle. And as I came off the car, I slapped the back of the vehicle, trying to get the driver's attention.

As a result of this incident, Sergeant Haynes did not sustain any injuries requiring immediate medical attention. He did experience pain in his elbow where he was struck by the truck's mirror or another object on the truck. There was no evidence of any damage to the patrol car.

Thus, although the truck was not sitting idle, there was no evidence that it was moving at a high rate of speed. Sergeant Haynes never testified regarding how fast the truck was going. The State argues, however, that "[t]he sound of the engine racing would indicate the car was traveling at a high rate of speed when it hit Sergeant Haynes." A jury would not, however, necessarily draw that inference, since the sound could simply indicate that defendant was revving the motor. Indeed, the fact that Sergeant Haynes could slap the back of the truck as it went by would permit a jury to infer that the truck actually was not traveling very fast.

The State also points to Sergeant Haynes' testimony that he was pushed by the truck into the patrol car and was injured. The jury, however, could take into account the lack of serious injury to Sergeant Haynes resulting from his contact with defendant's vehicle. Based on that testimony, the officer was not hurt when pushed into the patrol car, allowing the finding that the truck did not impact him very hard. Instead, he only had pain in his elbow from being struck by the mirror or other object extending from the truck as it passed by. Given the lack of significant injury to Sergeant Haynes, the lack of any evidence of damage to the patrol car, and the fact that an object extending from the truck struck the officer's elbow, a jury could con-

clude that the truck was not aimed directly at the officer and the impact was more of a glancing contact.

The State's argument that the manner in which defendant drove the truck necessarily placed Sergeant Haynes in great danger of death or serious injury would require us to draw inferences from the evidence in favor of the State. In order, however, to decide whether the deadly weapon issue should have been presented to the jury or decided as a matter of law, the evidence must be viewed in the light most favorable to defendant—and not to the State.

Accordingly, we hold that given the evidence presented at trial, although a jury could find that the truck was used as a deadly weapon, it could also find that the truck was not " 'likely to produce death or great bodily harm, under the circumstances of its use.' " *Id.* (quoting *Smith*, 187 N.C. at 470, 121 S.E. at 737). The trial court, therefore, erred in failing to submit to the jury the lesser included offense of assault on a government official.

We must, however, still determine whether the error was sufficiently prejudicial to constitute plain error. In arguing that it was not, the State simply asserts that "[t]he jury could only find from these facts [that] the car was used as a deadly weapon . . . ." We have already rejected this view of the evidence. We believe, given the nature of the evidence, that defendant has made a sufficient showing of plain error. *See State v. Collins*, 334 N.C. 54, 62-63, 431 S.E.2d 188, 193 (1993) (holding that trial court committed plain error when it failed to provide jury with instruction on lesser included offense of attempted murder); *State v. Carter*, 177 N.C. App. 539, 543-44, 629 S.E.2d 332, 336 (holding that trial court committed plain error "in failing to instruct the jury on the [lesser included] offense of conspiracy to commit common law robbery, and in doing so the trial court improperly limited the jury's consideration of the offenses which defendant could be found guilty of"), *aff'd per curiam*, 361 N.C. 108, 637 S.E.2d 537 (2006); *State v. Lowe*, 150 N.C. App. 682, 687, 564 S.E.2d 313, 316 (2002) (holding that it was plain error for trial court not to instruct on lesser included offense of misdemeanor assault inflicting serious injury). We, therefore, reverse defendant's conviction and order a new trial.

## II

[2] Defendant argues with respect to both of her convictions that she has been denied her right to a speedy trial under the Sixth

Amendment to the United States Constitution and Article I, Section 18 of the North Carolina Constitution and is entitled, therefore, to have the charges against her dismissed. As this Court has explained:

> The right of every person formally accused of a crime to a speedy and impartial trial is secured by the fundamental law of this State, *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309 (1965), and guaranteed by the Sixth Amendment to the federal constitution, made applicable to the states by the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967); *State v. McKoy*, 294 N.C. 134, 240 S.E. 2d 383 (1978). In determining whether an accused has been denied his right to a speedy trial, the courts have weighed four factors: (1) the length of the delay, (2) the cause of the delay, (3) waiver by the defendant, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972); *State v. McKoy, supra; State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976). Whether a speedy trial has been afforded depends on the circumstances of each particular case, and the burden is on the defendant who asserts denial of a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution.

*State v. Branch*, 41 N.C. App. 80, 85, 254 S.E.2d 255, 259, *appeal dismissed*, 297 N.C. 612, 257 S.E.2d 220 (1979).

"Thus the defendant is required to show that the unreasonable delay in his trial was caused by the neglect or wilfulness of the prosecution, as the Constitution does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case." *State v. Chaplin*, 122 N.C. App. 659, 663, 471 S.E.2d 653, 655 (1996) (internal quotation marks omitted). Nevertheless, "[a] showing of a particularly lengthy delay establishes a *prima facie* case that the delay was due to the neglect or wilfulness of the prosecution and requires the State to offer evidence fully explaining the reasons for the delay and sufficient to rebut the *prima facie* showing." *Id.*, 471 S.E.2d at 655-56 (internal quotation marks omitted).

In ruling on a motion to dismiss for denial of the right to a speedy trial, "the trial court is not always required to conduct an evidentiary hearing and make findings of facts and conclusions of law." *Id.*, 471 S.E.2d at 656. When, however, the motion to dismiss is "based on allegations not 'conjectural and conclusory [in] nature,' an evidentiary hearing is required and the trial court must enter findings to resolve any factual disputes and make conclusions in support of its

order." *Id.* (quoting *State v. Dietz*, 289 N.C. 488, 495, 223 S.E.2d 357, 362 (1976)).

In *State v. Roberts*, 18 N.C. App. 388, 389, 197 S.E.2d 54, 55, *cert. denied*, 283 N.C. 758, 198 S.E.2d 728 (1973), the defendant's case went to trial 13 months after the indictment. On the first day of trial, the defendant moved to dismiss for lack of a speedy trial. The trial court summarily denied the motion without allowing oral argument. This Court first observed: "From the record before us, it is impossible to tell whether the State caused the delay of a year in getting defendant's case to trial; and, if so, whether such delay was justified. It is likewise impossible to tell whether the delay was caused by defendant's conduct. Also, it is impossible to determine whether prejudice has resulted to defendant from the delay." *Id.* at 391, 197 S.E.2d at 56. The Court stressed that while a trial court is not required to hold an evidentiary hearing in every instance that a defendant claims denial of a speedy trial, "where the record shows a substantial delay and does not show the cause therefor, the trial judge should hold a sufficient hearing to allow him to determine the facts and balance the equities in accordance with *Barker v. Wingo* . . . ." *Id.*, 197 S.E.2d at 57.

The Court then remanded the case to the trial court for an evidentiary hearing on the question of the delay between the defendant's indictment and the trial. *Id.* at 392, 197 S.E.2d at 57. The Court directed that "[i]f the presiding judge determines that defendant's constitutional right to a speedy trial has been denied, he shall find the facts and enter an order vacating judgment, setting aside the verdict, and dismissing the indictment. If the presiding judge determines that defendant's constitutional right to a speedy trial has not been denied, he shall find the facts and enter an order denying the defendant's motion to dismiss, and order commitment to issue in accordance with the [original] judgment . . . ." *Id.* at 392-93, 197 S.E.2d at 57.

We think *Roberts* controls in this case if one of the motions to dismiss considered by the trial court on the first day of trial was based on defendant's speedy trial rights. Assuming, without deciding, that that is the case, then the record establishes that although defendant was indicted in October 2003, she was not tried until August 2008. Although the trial court denied a motion to dismiss for lack of a speedy trial on 9 November 2004, having made appropriate findings of fact and conclusions of law, an additional delay of almost four years then occurred. We can find no explanation for this delay in the record. While the record mentions some events that occurred in 2006, nothing explains why no trial occurred. Even the State acknowledges

that "[t]he record is unclear on what happened in the trial court between November 13, 2006 and August 26, 2008."

Consistent with *Chaplin* and *Roberts*, we believe that this delay is sufficient to warrant an evidentiary hearing. *See State v. Strickland*, 153 N.C. App. 581, 586, 570 S.E.2d 898, 903 (2002) (holding that 940 days between defendant's arrest and trial was sufficient to establish *prima facie* that delay was caused by prosecutorial negligence), *cert. denied*, 357 N.C. 65, 578 S.E.2d 594 (2003), *cert. dismissed*, 602 S.E.2d 679 (2004); *State v. Pippin*, 72 N.C. App. 387, 392, 324 S.E.2d 900, 904 (1985) (holding that 14-month delay in bringing defendant to trial "was *prima facie* unreasonable and required the district attorney to fully justify the delay"), *disc. review denied*, 313 N.C. 609, 330 S.E.2d 615 (1985); *Branch*, 41 N.C. App. at 86, 254 S.E.2d at 259 (holding that "once the defendant showed a seventeen month delay after his request for a speedy trial, the State should have presented evidence fully explaining the reasons for the delay").

We, therefore, remand for an evidentiary hearing on the issue of defendant's right to a speedy trial. As an initial matter, the trial court must determine (1) whether defendant moved to dismiss on that basis at the trial, and (2) if not, whether defendant's filing of the motion on 11 August 2006 was sufficient to raise the issue. In the event that the trial court determines that the issue was properly raised by defendant in the trial court, then the court must conduct a hearing sufficient to make findings of fact and conclusions of law in accordance with *Barker*.

Although we have held that defendant is entitled to a new trial on the charge of assault with a deadly weapon on a government official, this evidentiary hearing should be conducted first. As in *Roberts*, if the trial court determines that defendant's right to a speedy trial was violated, then the court "shall find the facts and enter an order vacating judgment, setting aside the verdict, and dismissing the indictment[s]" as to both charges. *Roberts*, 18 N.C. App. at 392, 197 S.E.2d at 57. If, on the other hand, the trial court concludes that no violation of the right to a speedy trial occurred, the trial court shall, after entering an appropriate order, proceed to trial on the charge of assault with a deadly weapon on a government official. The conviction for felony hit and run failure to stop with personal injury shall stand. Since, however, the trial court consolidated the convictions for purposes of sentencing, the trial court would need to resentence defendant on the felony hit and run conviction.

New trial in part; remanded with instructions in part.

Judges ROBERT C. HUNTER and STEELMAN concur.