An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-135

Filed 3 December 2025

Union County, No. 22CR281893-890

STATE OF NORTH CAROLINA

v.

ASHLEY LOUISE HARAZ

Appeal by defendant from judgments entered 10 July 2024 by Judge Matthew Brian Smith in Union County Superior Court. Heard in the Court of Appeals 10 September 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Laura S. Jenkins, for the State.*
>
> *Jason R. Page for defendant-appellant.*

ZACHARY, Judge.

Defendant Ashley Louise Haraz appeals from the trial court's judgments entered upon a jury's verdicts finding her guilty of trafficking in methamphetamine by transportation, maintaining a vehicle with the purpose of using, keeping, or selling a controlled substance, possession of drug paraphernalia, and trafficking opioids by possession. On appeal, Defendant argues that the trial court erred by proceeding with

the second day of her trial in her absence and committed plain error by neglecting to instruct the jury on certain lesser-included offenses. After careful review, we conclude that Defendant received a fair trial, free from prejudicial or plain error.

## I. Background

Defendant's case was originally scheduled to come on for trial on 1 July 2024 but was continued due to her scheduled release from a drug treatment program on 5 July. On 8 July 2024, Defendant's case came on for trial in Union County Superior Court. When Defendant arrived late on 8 July—after her case had been called—the trial court warned her that if she were late in the future the court would forfeit her bond and issue an order for her arrest. Defendant confirmed that she understood, the court heard pretrial motions, and the parties began jury selection.

On the second day of trial, Defendant was again absent at the commencement of the proceedings. Defense counsel informed the trial court that he had attempted to contact Defendant and that she possibly had transportation issues. The court forfeited her bond, issued an order for her arrest, and set her new bond at $500,000. The court then heard from counsel on the issue of proceeding with Defendant's trial in her absence. Defense counsel argued that the jury would be prejudiced by Defendant's absence but left the decision whether to proceed with the trial "to the [c]ourt's discretion." After the trial court indicated that it would proceed with the trial in absentia, the defense counsel objected pursuant to both the United States Constitution and the North Carolina Constitution. That same day, after a request

from defense counsel, the court entered an order memorializing its decision that "the trial [would] continue in Defendant's absence forthwith."

At trial, the State presented evidence tending to show the following: On 29 August 2022, Officer Matthew Kobera, a law enforcement officer with the Monroe Police Department, initiated a traffic stop of Defendant's vehicle due to her illegally tinted windows. A short time later, Officer Tina Harkey, a canine officer with the Monroe Police Department, arrived on the scene. Defendant, who had been driving, and a passenger exited the vehicle. Officer Harkey's canine partner, Zorro, conducted an open-air sniff of Defendant's vehicle and responded immediately with two alerts. Officer Kobera and Officer Harkey then searched the vehicle. The officers discovered needles; "a box that had a bunch of little baggies in it," some of which contained a "white powder" residue; a grinder with "white powder" residue; digital scales; cash "throughout the vehicle"; and drugs concealed in various places. The trial court admitted footage of the encounter from Officer Kobera's and Officer Harkey's body-worn cameras and the footage was published to the jury.

Defense counsel made a motion to dismiss all charges at the close of the State's evidence and renewed his motion at the close of all evidence; the trial court denied the motion both times.

Defendant appeared for the third and final day of her trial, 10 July 2024. At the conclusion of the trial, the jury returned verdicts finding Defendant guilty of all charges. The trial court entered judgments sentencing Defendant to a term of 70 to

93 months' imprisonment in the custody of the North Carolina Department of Adult Correction for her conviction for trafficking in methamphetamine by transportation. The court consolidated her convictions for maintaining a vehicle with the purpose of using, keeping, or selling a controlled substance and possession of drug paraphernalia and sentenced Defendant to a concurrent term of 6 to 17 months' imprisonment. Finally, the court sentenced Defendant to a consecutive term of 90 to 120 months' imprisonment for her conviction for trafficking opioids by possession.

Defendant gave oral notice of appeal.

## II.    Discussion

Defendant contends on appeal that the trial court erred by concluding that she was voluntarily absent from her trial, denying defense counsel's motion to continue, and proceeding with one day of the trial in absentia. Additionally, she asserts that the trial court committed plain error by failing to instruct the jury on certain lesser-included offenses.

### A. Waiver of the Right to be Present

Defendant argues that by proceeding with the second day of her trial in her absence, the trial court violated her constitutional right to confrontation.[1] We

---

[1] In Defendant's brief, she presents the proper standard of review for denial of a motion to continue but makes no argument that the trial court abused its discretion in denying her motion to continue. We therefore limit our review to the trial court's decision to proceed in absentia. N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."); *see also State v. Pabon*, 273 N.C. App. 645, 670–71, 850 S.E.2d

disagree.

### 1. Standard of Review

"The standard of review for alleged violations of constitutional rights is de novo." *State v. Anderson*, 222 N.C. App. 138, 142, 730 S.E.2d 262, 265 (2012) (citation and italics omitted). "Under a de novo review, the Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *State v. Joyner*, 284 N.C. App. 681, 687, 877 S.E.2d 73, 79 (2022) (cleaned up), *appeal dismissed and disc. review denied*, 385 N.C. 325, 890 S.E.2d 917 (2023).

### 2. Analysis

"[T]he Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees all defendants the right to be present at every stage of their trial." *State v. Golphin*, 352 N.C. 364, 389, 533 S.E.2d 168, 189 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001); U.S. Const. amend. VI. "Similarly, in North Carolina, pursuant to the Confrontation Clause in Article I, Section 23 of the North Carolina Constitution, a defendant has a right to be present at every stage of his [or her] trial." *Golphin*, 352 N.C. at 389, 533 S.E.2d at 189; N.C. Const. art. I, § 23.

"[A]lthough a criminal defendant possesses a constitutional right to be present at all stages of her trial, the United States Supreme Court has also recognized the

---

512, 530–31 (2020) ("[I]t is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein." (citation omitted)), *aff'd as modified*, 380 N.C. 241, 867 S.E.2d 632 (2022).

potential for a defendant in a non-capital case to waive that right." *State v. Sides*, 376 N.C. 449, 458, 852 S.E.2d 170, 177 (2020) (citation omitted); *see Kentucky v. Stincer*, 482 U.S. 730, 745, 96 L. Ed. 2d 631, 647 (1987); *Taylor v. United States*, 414 U.S. 17, 19, 38 L. Ed. 2d 174, 177 (1973). "The Supreme Court has made clear that in order to waive the right to be present, however, the defendant must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away." *Sides*, 376 N.C. at 458, 852 S.E.2d at 177 (cleaned up). "In other words, in order to waive the right to be present, there must be an intentional relinquishment or abandonment of that right." *Id.* at 458–59, 852 S.E.2d at 177 (cleaned up).

Likewise, under North Carolina law, "[i]n noncapital felony trials, the right to confrontation is purely personal in nature and may be waived by a defendant. A defendant's voluntary and unexplained absence from court subsequent to the commencement of trial constitutes such a waiver." *Anderson*, 222 N.C. App. at 142, 730 S.E.2d at 266 (cleaned up). "Once trial has commenced, the burden is on the defendant to explain his or her absence; if this burden is not met, waiver is to be inferred." *Id.* (citing *State v. Richardson*, 330 N.C. 174, 178, 410 S.E.2d 61, 63 (1991)).

Defendant's case was scheduled to come on for trial on 1 July 2024. However, she was not present when her case was called that day and defense counsel informed the trial court that Defendant was in a drug treatment program with a scheduled release date of 5 July. The court continued the trial for one week.

The case came on again for trial on 8 July. Defendant again was not present when her case was called at 9:37 a.m. that day; her attorney confirmed that he had instructed her to be at court at 9:30 a.m. and relayed a message that she would be 20 minutes late due to "transportation issues." After a few moments passed, Defendant arrived and the trial court gave her a warning regarding her lack of punctuality. The court allowed the trial to proceed, but advised Defendant: "If you are one minute late [for the remainder of the trial], I will revoke your bond and you will remain in custody during the pendency of this trial." Defendant confirmed that she understood.

On the second day of trial, Defendant was once again absent; defense counsel stated that based on communication "with various folks," it was his understanding that Defendant did not have a ride to court. The trial court forfeited Defendant's bond, issued an order for her arrest, and set her new bond at $500,000. The court heard from both counsel on the issue of proceeding with the trial in absentia, and defense counsel asked the court to wait until 10:30 a.m. A little before 10:00 a.m., the court asked defense counsel for further argument and defense counsel responded that resuming the trial in Defendant's absence would be "incredibly prejudicial" and would cause an "inference of guilt," possibly tainting the jury's verdicts. Noting Defendant's previous absence, the trial court stated:

> The [c]ourt makes the following conclusions of law. That once the jury -- sorry, once the trial has begun, a [d]efendant can voluntarily waive [his or her] right to be present through implication, through [his or her] actions. That once a jury -- once a trial has begun, the burden is on

> the [d]efense to explain the absence of the [d]efendant from trial. That the trial has begun under the law given that the jury has been selected but not yet impaneled. That the [d]efense has failed to carry its burden explaining . . . Defendant's actions and the [c]ourt finds that . . . Defendant has voluntarily absented herself from the proceedings.
>
> Based on the foregoing findings of fact and conclusions of law, the [c]ourt hereby orders that this trial shall continue forthwith in the absence of . . . Defendant.

Defense counsel objected to the ruling pursuant to both the North Carolina Constitution and the United States Constitution, the court overruled the objection, and the trial proceeded. The court entered a written order that day summarizing the facts concerning Defendant's absence, concluding that "Defendant ha[d] failed to carry her burden to prove her absence [wa]s not voluntary" and ordering that "[t]he trial w[ould] continue in Defendant's absence forthwith."

Later that morning, Defendant sent a message to a detention officer who was on duty at the courthouse, stating: "I did not show up to my trial." Defendant did not offer an explanation for her absence. That afternoon, Defendant was in a vehicle that was pulled over for a traffic stop by Officer Harkey. During this stop, Defendant told Officer Harkey that "her alarm didn't go off" and that "she contacted her attorney, told him she didn't have a ride[,] and he told her don't worry about it"—a claim which was "contrary to what [her defense attorney] ha[d] stated."

On appeal, Defendant focuses on alleged inconsistencies in the trial court's written order and presents her "communication" with the detention officer in support

of her contention that she "carr[ied] her burden to prove her absence [was] not voluntary." However, Defendant neglects to persuade this Court that her absence was not voluntary—that is, that she did not exhibit "an intentional relinquishment or abandonment" of the right to be present at trial. *Sides*, 376 N.C. at 459, 852 S.E.2d at 177 (citation omitted).

"A defendant may waive the general right to be present at [her] trial through [her] voluntary and unexplained absence from court," *State v. Davis*, 186 N.C. App. 242, 243, 650 S.E.2d 612, 614, *disc. review denied*, 362 N.C. 89, 656 S.E.2d 280 (2007), and here, Defendant did just that. She was aware that the second day of trial was scheduled that day, she had been notified as to her expected appearance by her attorney, she had been admonished regarding the seriousness of a failure to appear on time by the trial court, and yet she did not appear despite being seen in a vehicle subjected to a traffic stop by Officer Harkey on the afternoon of the second day of trial.

Accordingly, Defendant waived her right to be present on the second day of her trial and the court did not err by proceeding in absentia.

**B. Jury Instructions**

Defendant also argues that the trial court committed plain error by failing to deliver jury instructions on the offenses of possession of methamphetamine—a lesser-included offense of trafficking in methamphetamine by transportation—and trafficking between 4 and 14 grams of fentanyl—a lesser-included offense of

trafficking opioids by possession.

**1. Standard of Review**

In criminal cases, certain evidentiary and instructional issues that were not properly preserved by objection at trial and that are not otherwise "deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4).

At trial, Defendant did not request the delivery of jury instructions on any lesser-included offenses. However, Defendant now " 'specifically and distinctly' contends that the failure to instruct on the lesser[-]included offenses of possession of heroin and trafficking between 4 and 14 grams of fentanyl" amounted to plain error and seeks plain-error review.[2]

This Court reviews unrequested jury instructions on a lesser-included offense for plain error. *State v. Lowe*, 150 N.C. App. 682, 685, 564 S.E.2d 313, 315 (2002). "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Ruffin*, 298 N.C. App. 104, 116, 913 S.E.2d 454, 463 (2025) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the

---

[2] We note that this contention refers to the lesser-included offense of possession of *heroin.* However, given our review of the record and the rest of Defendant's appellate argument on this issue, we conclude that Defendant intended to refer to the lesser-included offense of possession of *methamphetamine* instead.

error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (cleaned up). "Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up).

### 2. Analysis

Defendant contends that "the trial court committed plain error by failing to instruct on the lesser-included offenses of possession of methamphetamine and the lower level of trafficking opioids" where there was conflicting evidence.[3] We disagree.

> It is well settled that a defendant is entitled to have a lesser-included offense submitted to the jury only when there is evidence to support it. The test in every case involving the propriety of an instruction on a lesser grade of an offense is not whether the jury could convict [the] defendant of the lesser crime, but whether the State's evidence is positive as to each element of the crime charged and whether there is any conflicting evidence relating to any of these elements.

*State v. Covington*, 248 N.C. App. 698, 702, 788 S.E.2d 671, 675 (2016) (citation omitted).

"Where no lesser[-]included offense exists, a lesser[-]included offense

---

[3] Defendant also argues that the trial court's failure to deliver the lesser-included offenses instructions violated her "constitutional due process rights." However, Defendant did not raise this argument before the trial court. Therefore, this argument is unpreserved and we decline to review it. *See State v. Lloyd*, 354 N.C. 76, 86–87, 552 S.E.2d 596, 607 (2001) ("Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal.").

instruction detracts from, rather than enhances, the rationality of the process." *Id.* (citation omitted). "If the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of the lesser[-]included offense, it is not error for the trial judge to refuse to instruct the jury on the lesser offense." *State v. Gamble*, ___ N.C. App. ___, ___, 917 S.E.2d 478, 481 (2025) (cleaned up).

"When determining whether there is sufficient evidence for submission of a lesser[-]included offense to the jury, we view the evidence in the light most favorable to the defendant." *State v. Clark*, 201 N.C. App. 319, 323, 689 S.E.2d 553, 557 (2009) (citation omitted).

A. Trafficking in Methamphetamine by Transportation

"A person may be charged with trafficking in methamphetamine when that person sells, manufactures, delivers, transports, or possesses 28 grams or more of methamphetamine or any mixture containing such substance." *State v. Christian*, 288 N.C. App. 50, 53, 884 S.E.2d 492, 497 (cleaned up), *disc. review denied*, 385 N.C. 315, 891 S.E.2d 267 (2023); *see* N.C. Gen. Stat. § 90-95(h)(3b) (2023). "[T]he State may proceed upon a charge of trafficking in methamphetamine by transportation if it presents substantial evidence that Defendant (1) knowingly transported methamphetamine, and (2) that the amount possessed was greater than 28 grams." *Christian*, 288 N.C. App. at 57, 884 S.E.2d at 499 (cleaned up).

Here, Officers Kobera and Harkey found a Crown Royal bag with "some residue

in the bottom" containing a smaller plastic bag with "white crystal in it" concealed behind the radio in Defendant's vehicle. The residue and white crystal were placed in two labeled bags, tested by the State Crime Lab, and revealed to be pure methamphetamine. The first bag, labeled 1A, weighed 65.1 grams, plus or minus .03 grams; the second bag, labeled 1B, weighed 1.97 grams, plus or minus .03 grams.

At trial, the court delivered the following jury instruction on trafficking in methamphetamine by transportation:

> Defendant has been charged with trafficking in methamphetamine, which is the unlawful transportation of at least 28 grams but not less than 200 grams of methamphetamine. For you to find . . . Defendant guilty of this offense, the State must prove two things beyond a reasonable doubt:
>
> First, that . . . Defendant knowingly transported methamphetamine from one place to another.
>
> And second, that the amount of methamphetamine which . . . Defendant transported was at least 28 grams but less than 200 grams.
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date . . . Defendant knowingly transported methamphetamine from one place to another and that amount which . . . Defendant transported was at least 28 grams but less than 200 grams, it would be your duty to return a verdict of guilty.

The amount of methamphetamine found in Defendant's car—65.1 grams and 1.97 grams—clearly warranted a charge of trafficking in methamphetamine by transportation of at least 28 grams but less than 200 grams. Thus, the trial court did

not err by failing to instruct on the lesser-included offense of possession of methamphetamine.

B. <u>Trafficking Opioids by Possession</u>

In addition to the methamphetamines discovered behind the car radio, Officer Harkey found four white cubes concealed in a backpack behind the driver's seat in Defendant's car. These cubes were delivered to the State Crime Lab in three bags. The first bag, labeled 2A, contained methamphetamine, ANPP[4], and fentanyl; the drugs weighed 8.98 grams, plus or minus .06 grams. The second and third bags, labeled 2B, contained ANPP and fentanyl; the opioids weighed 6.24 grams, plus or minus .08 grams. The total weight of the drugs was 15.22 grams. The forensic chemist who tested the materials testified that she did not determine how much of the contents of bag 2A were methamphetamine or fentanyl.

Defendant contends that because bag 2A contained a mixture of controlled substances but the indictment for the opioid charge does not use the word "mixture," this created a conflict in the evidence entitling her to jury instructions on the lesser-included offense of trafficking between 4 and 14 grams of fentanyl.

"The offense of trafficking [opioids] has two elements: (1) knowing possession (either actual or constructive) of (2) a specified amount of [opioids]." *State v. Walters*, 276 N.C. App. 267, 272, 854 S.E.2d 607, 611 (2021) (cleaned up); *see* N.C. Gen. Stat.

---

[4] "ANPP is a precursor for [f]entanyl which is . . . used in the manufacturing process" and is a Schedule II controlled substance. N.C. Gen. Stat. § 90-90(2).

§ 90-95(h)(4).

N.C. Gen. Stat. § 90-95(h)(4) provides, in pertinent part:

> Any person who sells, manufactures, delivers, transports, or possesses four grams or more of . . . [an] *opioid . . . or any mixture containing such substance*, shall be guilty of a felony . . . and if the quantity of such controlled substance or mixture involved . . . [i]s 14 grams or more, but less than 28 grams, such person shall be punished as a Class E felon.

N.C. Gen. Stat. § 90-95(h)(4) (emphasis added).

The trial court instructed the jury as follows on the charge of trafficking opioids by possession:

> Defendant has been charged with trafficking in opioid[s], which is the unlawful possession of at least 14 grams but less than 28 grams of [an] opioid. For you to find . . . Defendant guilty of this offense, the State must prove two things beyond a reasonable doubt:
>
> First, that . . . Defendant knowingly possessed opioid[s]. A person possesses [an] opioid if the person is aware of its presence and has both the power and intent to control the disposition of its use -- or use of that substance.
>
> And second, that the amount of opioid[s] which . . . Defendant possessed was at least 14 grams but less than 28 grams.
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date . . . Defendant knowingly possessed opioid[s] and that the amount which . . . Defendant possessed was at least 14 grams but less than 28 grams, it would be your duty to return a verdict of guilty.

It is undisputed that the amount of drugs discovered in the backpack in

Defendant's vehicle—8.98 grams in one bag and 6.24 grams in the second and third—totaled 15.22 grams. This properly corresponds to a charge of trafficking opioids by possession of at least 14 grams and less than 28 grams. Moreover, it is immaterial that there was a mixture of illicit substances in the bags; the statute clearly prohibits the trafficking by transportation of an "opioid . . . or any mixture containing such substance." *Id.* Therefore, the trial court did not err by failing to instruct the jury on the lesser-included offense of trafficking between 4 and 14 grams of fentanyl.

In sum, even viewed in the light most favorable to Defendant, "the State's evidence [wa]s positive as to each element of the crime[s] charged" and there was no "conflicting evidence relating to any of the[ ] elements" of the charged offenses. *Covington*, 248 N.C. App. at 702, 788 S.E.2d at 675 (citation omitted). Accordingly, Defendant cannot "demonstrate that a fundamental error occurred at trial." *Ruffin*, 298 N.C. App. at 116, 913 S.E.2d at 463 (citation omitted). We conclude that the trial court did not err or commit plain error in declining to submit unrequested instructions to the jury on the lesser-included offenses of the charges of trafficking in methamphetamine by transportation and trafficking opioids by possession.

## III. Conclusion

For the foregoing reasons, we conclude that the trial court committed neither prejudicial nor plain error.

NO ERROR.

Chief Judge DILLON and Judge FREEMAN concur.

Report per Rule 30(e).